IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and <br> BLACK & DECKER (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT BOSCH TOOL CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) No. 04 C 7955 <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker) sued Defendant Robert Bosch Tool Corporation ("Bosch") for patent infringement. Bosch filed counterclaims. Black & Decker moves to dismiss Counts I through III of Bosch's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2201. For the reasons discussed below, the Court grants Black & Decker's motion.

**LEGAL STANDARD**

In deciding Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction, the Court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). *See Sprint Spectrum L.P. v. City of Carmel, Indiana,* 361 F.3d 998, 1001 (7th Cir. 2004). The Court may look beyond the pleadings. *See Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). The Court must "presume that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record.'" *Id.,* quoting *Renne v. Geary,* 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). The party asserting

jurisdiction bears the burden of proof on a Rule 12(b)(1) motion. *United Phosphorus Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 945-46 (7th Cir. 2003).

## BACKGROUND

### I. Black & Decker's Complaint

Black & Decker's Complaint asserts that Bosch has infringed Black & Decker's United States Patents No. 6,308,059 ("the '059 patent") and No. 6,788,925 ("the '925 patent"). (R. 1-1; Compl. ¶ 2.) These patents generally relate to portable jobsite radios. (*Id.* ¶ 3.) Black & Decker accuses Bosch's "Power Box" jobsite radio of infringing "at least one claim" of each of the patents-in-suit. (*Id.* ¶¶ 9, 11.)

### II. Bosch's Counterclaims

In response, Bosch asserts various counterclaims against Black & Decker. Count I of Bosch's counterclaims alleges that Black & Decker's U.S. Patent No. 6,427,070 ("the '070 patent") is invalid under 35 U.S.C. § 102(e) and unenforceable due to inequitable conduct. (R. 12-1; Countercl. ¶¶ 28-30.) Count II alleges that Black & Decker's '070 patent and its United States Patent Application No. 10/758,492 ("the '492 application") are unenforceable because of inequitable conduct. (*Id.* ¶¶ 31-33.) Count III alleges that the '059 and '92 patents and the '492 application are unenforceable under the doctrine of unclean hands. (*Id.* ¶¶ 34-39.)

### III. Black & Decker's Cease And Desist Letter To Bosch

Black & Decker's patent counsel wrote Bosch's patent counsel on November 1, 2004 ("Black & Decker's cease and desist letter"). (R. 31-1; Def.'s Opp. Br., Ex. E.) The letter generally described the inventions of the '059 and '925 patents and set forth sample claims from both of those patents as well as the pending '492 application. Black & Decker then stated, "[w]e believe that the Bosch Power Box products infringe one or more claims of the '059 and '925

2

patents, specifically, the Bosch BP10-CD Power Box and similar products that may be sold under different product designations." (*Id.* at 2-3.) Black & Decker further stated that "the pending claims are also infringed." (*Id.* at 3.) The letter included claim charts providing element-by-element comparisons of the claims of the '059 and '925 patents to the accused products. (*Id.*) Black & Decker requested that Bosch "immediately discontinue any manufacture, sale, promotion, advertisement or offer for sale of the Bosch PB10-CD Power Box radio charger." (*Id.* at 4.)

## ANALYSIS

Black & Decker first argues that the Court does not have subject matter jurisdiction over Count I of Bosch's counterclaim because Black & Decker has never asserted that Bosch infringes the '070 patent and therefore, no actual controversy exists supporting Bosch's declaratory judgment claim with respect to that patent. Next, Black & Decker argues that the Court does not have subject matter jurisdiction over Count II of Bosch's counterclaim for the same reason as Count I, and also because no actual controversy can exist with respect to a pending patent application, such as the '492 application. Regarding Count III of Bosch's counterclaim, Black & Decker argues that the Court does not have subject matter jurisdiction because that claim also involves the '492 application and therefore no actual controversy exists until that application issues as a patent. The Court addresses whether it has subject matter jurisdiction over Bosch's claims related to the '070 patent and the '492 application in turn, in sections II and III below.

### I. Declaratory Judgments In Patent Infringement Cases

"The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *GAF Bldg. Mat'ls Corp. v. Elk Corp. Of Dallas,* 90 F.3d 479, 481 (Fed. Cir. 1996)

3

(internal citations omitted); *See* 28 U.S.C. § 2201(a). For purposes of declaratory actions in patent cases, there is a two-prong test to determine if an actual controversy exists: (1) the plaintiff is presently engaged in activity to produce the allegedly infringing product; and (2) the plaintiff is under a reasonable apprehension that the patentee will enforce his rights by initiating an infringement suit. *BP Chem. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed. Cir. 1993). Whether an actual controversy exists under the Declaratory Judgment Act in a patent case is a question of law. *Vanguard Res., Inc. v. PEAT, Inc.,* 304 F.3d 1249, 1254 (Fed. Cir. 2002).

An objective standard governs whether a party is under a reasonable apprehension of suit. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 887 (Fed. Cir. 1992). "Although the best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation, an express threat is not required." *Vanguard,* 304 F.3d at 1254. Accordingly, courts must examine the totality of the circumstances in determining whether a controversy exists. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed. Cir. 1983).

A declaratory judgment plaintiff bears the burden of establishing the existence of an actual case or controversy. *See Cardinal Chem. Co. v. Morton Int'l Inc.,* 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

II. **Whether The Court Has Subject Matter Jurisdiction Over Bosch's Claims Related To Black & Decker's '070 Patent**

Bosch has failed to meet its burden of showing that an actual controversy exists regarding whether it infringes Black & Decker's '070 patent. Courts have found that no actual controversy existed regarding patent claims that the patentee did not assert, even when the patentee was asserting other claims from that same patent. *See Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1399 (Fed. Cir. 1984); *Eli Lilly Co. v. Pharms.,* 101 F.Supp.2d 1139, 1142 (S.D. Ind. 2000). *See also Grain Processing Corp. v. American Maize-Prods. Co.,* 840

4

F.2d 902 (Fed. Cir. 1988). Bosch concedes that Black & Decker has not expressly charged it with infringing the '070 patent. Rather, Bosch points to the fact that Black & Decker has already accused of infringement "the invention claimed in the '070 patent" and has demonstrated its willingness to enforce its rights on the same technology as the '070 patent.[1] Bosch relies on *Goodyear Tire & Rubber Co. v. Releasomers Inc.,* 824 F.2d 953, 956 (Fed. Cir. 1987) and *Vanguard Res. v. PEAT, Inc.,* 304 F.3d 1249, 1254 (Fed. Cir. 2002), to demonstrate that Black & Decker's actions are sufficient to give Bosch a reasonable apprehension of suit. Both *Goodyear* and *Vanguard,* however, are distinguishable from the facts here. In *Goodyear,* the patentee sued the declaratory judgment plaintiff, Goodyear, in state court for misappropriation of trade secrets. The underlying technology in the state action was the same technology involved in the patents-at-issue in the later declaratory judgment action. Those patents did not issue until after the patentee commenced the state court trade secret action. Here, on the other hand, the '070 patent had already issued at the time that Black & Decker filed this suit. Therefore, instead of assuming that another suit on the '070 patent was forthcoming, it is more logical for Bosch to assume that Black & Decker, in fact, had chosen not to assert that patent against Bosch.

Additionally, in *Goodyear,* the Federal Circuit based its decision on the fact that during negotiations in the state action, the patentee informed Goodyear of the allowance of the patents-at-issue and "made innuendos that could reasonably have led Goodyear to believe that [the patentee] would bring an infringement action." *Goodyear,* 824 F.2d at 956. Bosch has not pointed to any such action on the part of Black & Decker.

---

[1] Bosch also argues that "Black & Decker has aggressively filed suit against Bosch and third parties." (R. 31-1; Bosch Resp. Br. at 6.) But, Bosch does not submit any evidence showing such suits against third parties and therefore the Court does not address this argument related to third party suits.

5

In *Vanguard,* the Federal Circuit based its decision in part on the fact that the patentee wrote Vanguard a letter indicating that it "no longer ha[d] the right to market [the technology at issue] or to use [the patentee's] Intellectual Property for the development of future contracts." Further, the patentee repeatedly contacted Vanguard's customers implying to them that Vanguard was using its technology without permission. Based on all of these facts and circumstances, the Federal Circuit held that Vanguard had a reasonable apprehension that the patentee would sue it for patent infringement in the future. Unlike in *Vanguard,* where the patentee generally charged Vanguard with using the patentee's "intellectual property," as a whole, here, Black & Decker's directed its charges of infringement toward specific patents, and the pending '492 application. Also, Bosch does not point to any evidence that Black & Decker has made statements to Bosch's customers about Bosch using Black & Decker's technology without permission.[2]

At different points in its Response Brief, Bosch mentions only in passing that claim 33 of the pending '492 application set forth in Black & Decker's cease and desist letter is identical to claim 1 in the '070 patent. (R. 31-1; Def.'s Resp. Br. at 1, 2.) Bosch, however, never fully develops this argument in its brief.[3] As Black & Decker points out, the Court presumes that different claims cover different inventions. *See Jones v. Hardy,* 727 F.2d 1524, 1528 (Fed. Cir. 1984) ("Each claim must be considered as defining a separate invention.") Merely pointing out that the '492 application and the '070 patent contain a claim with identical language is not

---

[2]The cases cited by Bosch in footnotes 2 and 3 of its Response Brief are also distinguishable from the facts here. Those cases either involved some additional action on the part of the patentee, such as a public statement, or a longer history of litigation between the parties.

[3]Failure to develop an argument constitutes a waiver. *See Kramer v. Banc of Am. Sec., LLC,* 355 F.3d 961, 964 n. 1 (7th Cir. 2004).

sufficient alone for Bosch to meet its burden to show that it was under a reasonable apprehension of suit when it filed its declaratory judgment counterclaims against the '070 patent.[4]

Additionally, the Federal Circuit's test for declaratory judgment jurisdiction requires that the declaratory judgment plaintiff have a reasonable apprehension that the patentee will "initiate suit." *Goodyear,* 824 F.2d at 955 (citing *Indium Corp. v. Semi-Alloys, Inc.,* 781 F.2d 879 (Fed. Cir. 1985)). Therefore, even if this identical claim language did create in Bosch a reasonable apprehension that it infringed claim 1 of the '070 patent, Bosch does not point to any reason why it was apprehensive that Black & Decker would follow through by filing suit on that patent. The '070 patent is not related to either of the patents-in-suit or the '492 application. Also, Black & Decker's cease and desist letter never mentioned the '070 patent.

In reviewing all the facts and circumstances, Bosch has failed to carry its burden of showing it had a reasonable apprehension of suit under the '070 patent at the time it filed its declaratory judgment counterclaims. Accordingly, the Court lacks subject matter jurisdiction over Bosch's claims related to the '070 patent.

### III. Whether The Court Has Subject Matter Jurisdiction Over Bosch's Claims Related To Black & Decker's '492 Application

Bosh argues that an actual controversy exists because it has satisfied both prongs of the actual controversy test: Black & Decker charged Bosch with infringing pending claims of the '492 application in its cease and desist letter, and Bosh currently makes the product accused of such infringement. The Federal Circuit, however, has held that in the context of a pending

---

[4]The Court notes that the '070 patent has a different specification than the '492 application. Further, because it is not related to the '492 application, it has a different prosecution history than the '492 application. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history.)

7

patent application, "[a] broader inquiry than our two-part 'test' is required [] because no patent ha[s] issued when the complaint was filed." *GAF Bldg. Mat'ls,* 90 F.3d at 482. Rather, when the patent claims at issue have yet to issue, the Federal Circuit looks to basic principles articulated by the Supreme Court for determining whether a justiciable case or controversy exists:

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937)). The Federal Circuit in *GAF Bldg. Mat'ls* held that GAF's complaint seeking a declaratory judgment of noninfringement and invalidity of a pending patent application did not present a justiciable case or controversy under Article III or 28 U.S.C. § 2201. *GAF Bldg. Mat'ls,* 90 F.3d at 482.

Bosch concedes that courts have recognized that a court does not have jurisdiction over a pending patent application when declaratory judgment of noninfringement or invalidity is at issue. Bosch attempts to distinguish this case by arguing that it is seeking a declaratory judgment of unenforceability. Bosch asserts that the language of the specific claims that eventually issue is irrelevant to the determination of enforceability because the events giving rise to the unenforceability happened during prosecution. As Black & Decker points out, however, it is possible for an applicant to cure inequitable conduct during the prosecution of the application. *See Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1572 (Fed. Cir. 1983). Therefore,

8

until a patent issues, it is premature to analyze whether that patent will be unenforceable due to inequitable conduct.[5]

Just as in *GAF Bldg. Mat'ls,* here, a ruling on the enforceability of the '492 application would be merely advisory and academic. Because "an inventor has no enforceable rights under the patent laws until the patent securing those rights has issued," *Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 935 F.2d 1263, 1266 (Fed. Cir. 1992), Black & Decker has no rights in the '492 application for the Court to rule are "unenforceable." In other words, the Court cannot provide "specific relief through a decree of a conclusive character" because there is no enforceable property right for the Court to declare unenforceable. *GAF Bldg. Mat'ls,* 90 F.3d at 482. Accordingly, the Court grants Black & Decker's motion to dismiss Bosch's counterclaims seeking declaratory judgments related to the '492 application.

---

[5]Indeed, Bosch relies heavily on the fact that the claims of the '492 application "cover" the same invention as the claims of the patents-in-suit. The invention "covered" by any patent that issues from the '492 application, however, will be a result of the language of the claims that ultimately issue, interpreted in light of the intrinsic record. Because these claims have yet to issue, there is no way for the Court to determine whether the '492 application does in fact "cover" the same invention as the patents-in-suit.

**CONCLUSION**

Because no actual controversy exists, the Court lacks subject matter jurisdiction over Bosch's declaratory judgment counterclaims related to the '070 patent and the '492 application and grants Black & Decker's motion to dismiss Counts I through III of Bosch's counterclaims as they relate to the '070 patent or the '492 application.


Dated: June 9, 2005                    ENTERED:

                                       _____
                                       AMY J. ST. EVE
                                       United States District Court Judge