IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and<br>BLACK & DECKER (U.S.) INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 04 C 7955<br>)<br>) |
| ROBERT BOSCH TOOL CORPORATION, | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") bring this lawsuit against Defendant Robert Bosch Tool Corporation ("Bosch") alleging infringement of various claims of U.S. Patent Nos. 6,308,059 (the "'059 patent") and 6,788,925 (the "'925 patent"). Before the Court is Black & Decker's Motion for Summary Judgment on Bosch's Defense of Inequitable Conduct. Because material issues of fact exist, the Court denies Black & Decker's motion.

## BACKGROUND

### I. General Background

Black and Decker (U.S.) Inc. is the exclusive licensee of the '059 and '925 patents. (R. 169-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 5.) Both of the patents cover a jobsite radio. (*Id*. ¶¶ 9, 11.) On December 8, 2004, Black & Decker brought this lawsuit against Bosch for infringement of these patents. (*Id.* ¶ 16.) In its Answer to the Complaint, Bosch raised the affirmative defense "that one or more of the patents in suit are invalid and unenforceable for failure to comply with the provisions of 35 U.S.C. §§ 101, 102, 103, 112 or inequitable conduct." (*Id.* ¶ 18.)

## II.     The Domes Patents

Joseph Domes ("Domes") is the inventor of both the '059 patent and the '925 patent. (*Id.* ¶¶ 9, 11, Ex. A & B.) Domes testified that he conceived of his inventions in December 1996 and began working on his patent applications with his attorney in January 1997. (*Id.* ¶¶ 47, 48.) On December 12, 1997, Domes filed a patent application, serial number 60/069,372. (R. 235-1, Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 84.) Domes filed the '059 application on December 11, 1998. (*Id.* ¶ 85.) The '059 patent claims priority to the '372 patent application. (*Id.*) The '059 patent entitled "Ruggedized Tradesworker Radio" issued on October 23, 2001. (*Id.*; Pl.'s Rule 56.1 Stmt. Facts ¶ 9.) Meanwhile, Black & Decker prosecuted the '925 patent which was filed on August 10, 2002. (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 86.) The '925 patent entitled "Ruggedized Tradesworker Radio" issued on September 7, 2004. (Pl.'s Rule 56.1 Stmt. Facts ¶ 11.)

During the prosecution of the Domes patents, the Patent Office Examiner identified and considered the Toops patent and the Eggering patent. (*Id.* ¶ 79.) The Smith patent applications for a rugged radio were not disclosed to the Examiner. (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 85.) Specifically, they did not disclose patent application serial number 09/153,621 ("Smith I"), the patent application that ultimately issued as U.S. Patent No. 6,427,070 ("Smith II" or the "'070 patent"), or the Smith II patent to the Patent and Trademark Office ("PTO") during the prosecution of the '059 patent. (*Id.*) In addition, nobody disclosed the Smith I patent application, the Smith II patent application or patent, or the patent application that ultimately issued as U.S. Patent No. 6,496,688 ("Smith III" or the "'688 patent") during the prosecution of the '925 patent. (*Id.* ¶ 86.)

**III.    The Smith Patents**

Black & Decker prosecuted the Smith patents that were the basis of the "DeWalt" jobsite radio. (Pl.'s Rule 56.1 Stmt. Facts ¶ 14; Def.'s Rule 56.1 Stmt. Add'l Facts ¶¶ 95-99.) By April 3, 1997, Black & Decker was actively developing the DeWalt jobsite radio and by June 21, 1997, Black & Decker had proposed electrical specifications for this radio. (Def.'s Rule 56.1 Stmt. Add'l Facts ¶¶ 89, 90.) By September 11, 1997, Black & Decker had completed the following for the DeWalt jobsite radio: (a) a preliminary industrial design configuration; (b) a definition of its product features; and (c) preliminary market research. (*Id.* ¶ 92.)

On September 15, 1998, Black & Decker filed the first patent application relating to the DeWalt jobsite radio with named inventor Roger Q. Smith that had serial number 09/153,621 ("Smith I"). (*Id.* ¶ 95.) The '070 patent is a continuation of the Smith I application, which was filed on March 4, 1999 and issued on July 30, 2002, containing the same specification and drawings as Smith I. (*Id.* ¶ 96.) Patent '688 is a continuation of the Smith II application, which was filed on May 6, 2002 and issued on December 17, 2002, containing the same specification and drawings as Smith II. (*Id.* ¶ 97.) United States Patent No. 6,977,481 ("Smith IV" or the "'481 patent") is a continuation of the Smith III application, which was filed on October 15, 2002 and issued on December 20, 2005, containing the same specification and drawings as Smith III. (*Id.* ¶ 98.)

On March 13, 2001, Black & Decker filed a Disclosure Statement identifying the Domes patent applications in the prosecution of '070 (Smith II) patent application, but failed to include these references on its Information Disclosure Statement. (*Id.* ¶ 108.) In addition, the Domes patent applications are not listed as references considered on the face of either Smith patents

'070 and '688. (*Id.* ¶ 110.) During the prosecution of the '481 patent (Smith IV), the patent examiner found the '059 patent on his own and rejected the Smith claims based on the '059 patent. (*Id.* ¶ 112.)

Both the Smith '070 and '688 patents issued over the Domes applications. (Pl.'s Rule 56.1 Stmt. Facts ¶ 67.) The Patent Office Examiner did not declare an interference when Black & Decker disclosed the Domes applications during the Smith prosecution. (*Id.* ¶ 66.) Likewise, the Examiner did not issue an unpatentability rejection for the Smith applications based upon the Domes disclosure. (*Id.* ¶ 68.)

### IV. Relationship Between Domes, Black & Decker, & Patent Families

In 2000, Domes accused Black & Decker's DeWalt jobsite radio of infringing his patent. (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 102). Subsequently, Black & Decker agreed to acquire a license to use the technology from Domes. (*Id.* ¶ 104.) Section I of the License Agreement ("License Agreement") between Black & Decker and Domes provides:

- Black & Decker currently sells a radio charger (the "Radio Charger") and has pending patent applications disclosing and claiming Radio Charger.

- DOMES has a pending patent application with claims that DOMES has asserted cover the Radio Charger.

- Black & Decker and DOMES desire to avoid a possible interference.

- Black & Decker and DOMES have entered into the agreement to settle such assertion and such possible interference.

(*Id.* ¶ 104.) Section X of the License Agreement states: "B&D shall have the right to comment and suggest changes to communications to be filed in the PTO or any other foreign patent office. DOMES however shall have final authority on the papers to be filed in the PTO or any other foreign patent office." (*Id.* ¶ 105.)

In July 2003, Black & Decker acquired all rights under the Domes patents. (*Id.* ¶ 65.) The Assignment Agreement between Black & Decker and Domes dated July 24, 2003 provides in pertinent part:

> B&D currently sells a radio charger (the "Radio Charger") and has patents and pending patent applications disclosing and claiming Radio Charger.
>
> ….
>
> Previously, DOMES alleged that his patent portfolio would cover the Radio Charger. In order to settle such allegations, B&D and DOMES entered into a non-exclusive license agreement (the "License Agreement").
>
> Since then, B&D and DOMES have filed patent applications covering the Radio Charger that could ultimately result in the declaration of an interference and/or the invalidation of at least one patent of either B&D or DOMES. In order to avoid a possible interference, and to settle and resolve issues regarding the parties' portfolios, B&D desires to purchase DOMES' patent portfolio, and DOMES desires to sell his patent portfolio to B&D.

(*Id.*, Ex. S; Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 107.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in

favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. Unsupportable or specious "explanations or excuses will not suffice to raise a genuine issue of fact," but instead, the non-movant must submit conflicting, admissible evidence to raise a genuine issue of material fact. *Ferring B.V. v. Barr Labs., Inc.,* 437 F.3d 1181, 1193 (Fed. Cir. 2006) (citation omitted); *see also Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004) (non-moving party must present definite, competent evidence to rebut summary judgment motion).

## ANALYSIS

Bosch contends that the Domes patents '059 and '925 are unenforceable due to inequitable conduct. Because of the *ex parte* nature of the patent application process, applicants have an express "duty of candor and good faith" that governs their dealings with the PTO. *See* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO]"); *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 439 F.3d 1335, 1339 (Fed. Cir. 2006) ("Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a 'duty of candor and good faith' to the PTO") (citation omitted). The duty of candor and good faith requires that the applicant disclose to the PTO all information "material to patentability." *See* 37 C.F.R. § 1.56(a). "A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose information material to patentability, coupled with an intent to deceive the PTO." *M. Eagles Tool Warehouse*, 439 F.3d at 1339. If the alleged infringer establishes inequitable conduct, the patent is rendered unenforceable. *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1226 (Fed. Cir. 2006) (citation omitted); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995).

Where the inequitable conduct alleged is the failure to disclose material information, the alleged infringer must demonstrate by clear and convincing evidence that (1) the information was material to patentability; (2) the applicant knew of the information and its materiality; and (3) the applicant failed to disclose the information with an intent to mislead the PTO. *Elk Corp. of Dallas v. GAF Bldg. Mat'ls Corp.,* 168 F.3d 28, 30 (Fed. Cir. 1999). The Federal Circuit warns that "if the facts of materiality or intent are reasonably disputed, the issue is not amenable to summary disposition." *Baker Oil Tools v. Geo Vann, Inc.*, 828 F.2d 1558, 1566-67 (Fed. Cir. 1987). Indeed, because the Court's analysis is fact intensive, Federal Circuit "precedent urges caution in the grant of summary judgment respecting a defense of inequitable conduct." *Paragon Podiatry Lab., Inc., v. KLM Labs., Inc.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993).

**I.      Materiality**

First, Black & Decker contends that Bosch cannot present any evidence that the Smith patents and Smith patent applications are material to the Domes patents. "Materiality is not limited to prior art but embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Liquid Dynamics Corp.,* 449 F.3d at 1226 (citation omitted); *see also Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.,* 419 F.3d 1346, 1350-51 (Fed. Cir. 2005) (information material when "there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent").

Bosch argues that the Smith patents are material to the patentability of the Domes patents because the Smith patents disclose essentially the same subject matter claimed in the Domes

7

patents, and thus Black & Decker had a duty to disclose the pending patent applications to the PTO. *See Molins PLC,* 48 F.3d at 1185 (citing Manual of Patent Examining Procedure ("MPEP") § 2001.06(b)). In support of its argument, Bosch points to various undisputed facts in the record, including Domes' prior accusation that Black & Decker's DeWalt jobsite radio – which was based on the Smith patents – infringed Domes' patent. (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 102.) Bosch also relies upon the January 5, 2001 License Agreement between Black & Decker and Domes that notes Black & Decker's "pending patent applications disclosing and claiming [the] Radio Charger." (*Id.* ¶ 104.) The License Agreement also states: "Black & Decker and Domes have entered into the agreement to settle such assertion and such possible interference that the parties desire to avoid having the PTO declare an interference." (*Id.*) In addition, Black & Decker's attorney, Adan Ayala, who prosecuted the Smith patents, testified at his deposition that "one of the parties recognized that the patent applications covering the radio charger could ultimately result in the declaration of an interference and/or the invalidation of at least one patent of either Black & Decker or Domes." (R. 267-1, Def.'s Corrected Response to Pl.'s Rule 56.1 Stmt. Facts ¶ 63, Ex. 28, Ayala Dep. at 119.) Based on this evidence and drawing all reasonable inferences in Bosch's favor, a reasonable trier of fact could conclude that Black & Decker had a similar product to what is claimed in the Domes '059 patent and that Black & Decker and Domes expected a possible interference. *See Anderson v. Liberty Lobby*, 477 U.S. at 248.

Black & Decker nevertheless argues that because the Domes patents were submitted to the PTO during the Smith prosecution and the examiner did not declare an interference, the Smith patent applications are immaterial. Although "[t]he result of a PTO proceeding that

8

assesses patentability in light of information not originally disclosed can be of strong probative value" in assessing materiality, the standard to be applied is an objective standard, namely, whether a reasonable examiner would consider the withheld reference important. *Molins PLC*, 48 F.3d at 1179-80. In short, Black & Decker's argument is inconclusive because a reference is not immaterial simply because the claims are eventually deemed patentable despite the withheld reference. *Id.* at 1179.

Finally, Black & Decker asserts that the Smith patents are not material because Bosch's expert, Paul Horowitz, did not consider them as relevant prior art in his report. Black & Decker's argument relies upon an inference that the Court cannot make at this procedural posture. Specifically, the Court must view the facts and all reasonable inferences in a light most favorable to Bosch, not Black & Decker. Thus, there is a genuine issue of material fact whether Horowitz's omission of the Smith patents from the "Summary of Relevant Prior Art" section of his report supports the conclusion that the Smith patents are immaterial to the Domes patents. Moreover, materiality is not limited to prior art. *See Liquid Dynamics Corp.,* 449 F.3d at 1226.

In sum, there is a genuine issue of material fact whether the same subject matter is disclosed in both the Domes and Smith patent applications, and thus the Smith patents may be material to the Domes patents. In other words, Bosch presents definite, competent evidence rebutting Black & Decker's materiality argument. *See Butts*, 387 F.3d at 924.[1]

---

[1] Bosch also asserts that a potential priority conflict exists that would raise the level of materiality, thus requiring a lesser showing of intent. *See Purdue Pharma L.P., v. Endo Pharm., Inc.,* 438 F.3d 1123, 1128-29 (Fed. Cir. 2006) (courts balance materiality and intent when weighing a claim of inequitable conduct and, as a general principle, a lesser showing of intent is sufficient when the omission is highly material). The Court need not address this balancing test because there are genuine issues of material fact for trial concerning both materiality and intent. *See Ferring B.V. v. Barr Labs., Inc.,* 437 F.3d 1181, 1186 (Fed. Cir. 2006).

9

## II. Intent

Next, Black & Decker argues that summary judgment is warranted because no genuine issue of fact exists regarding intent, namely, whether Domes actually knew that he was withholding material information or that he intended to deceive the PTO. A party need not prove intent to deceive by direct evidence. *M. Eagles Tool Warehouse,* 439 F.3d at 1341. Absent a credible explanation, "intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,* 394 F.3d 1348, 1354 (Fed. Cir. 2005); *see also M. Eagles Tool Warehouse,* 439 F.3d at 1341 ("Intent is generally inferred from the facts and circumstances surrounding the applicant's overall conduct, especially where there is no good faith explanation for a nondisclosure.").

Here, Bosch contends that Domes, Black & Decker, and their representatives had knowledge of the Smith patents during the Domes prosecution. Indeed, a question of fact exists as to whether Domes knew of the Smith patents after the License Agreement was entered into on January 5, 2001 – over ten months before the '059 patent issued – especially because the License Agreement discloses that Black & Decker "has pending patent applications disclosing and claiming [the] Radio Charger." (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 104.) Not only can it be inferred from the License Agreement that Black & Decker had a similar product to what is claimed in the Domes '059 patent, the License Agreement also refers to a possible interference. Specifically, the License Agreement states: "Black & Decker and Domes have entered into the agreement to settle such assertion and such possible interference that the parties desire to avoid having the PTO declare an interference." (*Id.*) Viewing the evidence and all reasonable

10

inferences in a light most favorable to Bosch, there is a genuine issue of material fact whether Domes knew of Black & Decker's similar pending patent applications while prosecuting the '059 patent and that Domes intended to deceive the PTO by failing to disclose the pending Smith patent applications to avoid an interference.

Furthermore, a question of fact exists whether Black & Decker was associated with the prosecution of the '059 Domes patent, and thereby had a duty to disclose the Smith patent applications. *See* 37 C.F.R. §1.56(c)(3) (individual "who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor" has a duty to disclose material information). Specifically, Section X of the License Agreement provides that "B&D shall have the right to comment and suggest changes to communications to be filed in the PTO or any other foreign patent office." (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 105.) Moreover, based on Domes' September 23, 3005 deposition, Black & Decker may have given input into the prosecution of the Domes '059 patent application. (*See* R. 235-1, Black & Decker's Resp. to Bosch Stmt. Add'l Facts Ex. X, Domes Dep. at 158-60). In addition, Black & Decker had knowledge of its own Smith patent applications because Black & Decker's attorney, Adan Ayala, prosecuted the Smith patents. (Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 99.) Viewing the evidence in a light most favorable to Bosch, a reasonable trier of fact could infer that Black & Decker was associated with the prosecution of the '059 patent and knew of the pending Smith patent applications and patents.

Finally, a question of fact exists as to whether Black & Decker had an intent to deceive the PTO during the prosecution of the '925 patent after Black & Decker purchased the rights on January 24, 2003 – well over a year before the '925 patent issued. Upon the purchase of the

rights to the '925 patent, Black & Decker assumed a duty to disclose all material information as an assignee of the patent, *see* 37 C.F.R. §1.56(c)(3), and as discussed above, Black & Decker's attorney, Ayala, was prosecuting the Smith patents. Also, similar to the License Agreement, the Assignment Agreement between Domes and Black & Decker provided:

> B&D and DOMES have filed patent applications covering the Radio Charger that could ultimately result in the declaration of an interference and/or the invalidation of at least one patent of either B&D or DOMES. In order to avoid a possible interference, and to settle and resolve issues regarding the parties' portfolios, B&D desires to purchase DOMES' patent portfolio, and DOMES desires to sell his patent portfolio to B&D.

(Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 107.) A genuine issue of material fact exists as to whether Black & Decker intended to deceive the PTO by failing to disclose the pending Smith patent applications to avoid a possible interference.

In sum, because the evidence is not so one-sided that the factual issue of intent may be decided as a matter of law, the Court denies Black & Decker's summary judgment motion. *See Paragon Podiatry Lab.,* 984 F.2d at 1190 (citing *Anderson v. Liberty Lobby*, 477 U.S. at 252).[2]

---

[2] The Court need not address Black & Decker's argument that Bosch failed to sufficiently plead its inequitable conduct defense because Black & Decker's motion to strike is untimely under Federal Rule of Civil Procedure 12(f) (plaintiff has 20 days after service of pleading containing affirmative defense to file motion to strike). In addition, Black & Decker has had sufficient notice of the defense. Indeed, both parties have hired experts who provided reports on the issue of inequitable conduct.

## CONCLUSION

For these reasons, the Court denies Black & Decker's Motion for Summary Judgment on Bosch's Defense of Inequitable Conduct.

**Dated:** July 24, 2006

                                    **ENTERED**

                                    _____
                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**