IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLACK & DECKER INC. and | ) | |
| BLACK & DECKER (U.S.) INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04 C 7955 |
| v. | ) | |
| | ) | |
| ROBERT BOSCH TOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") brought this lawsuit against Defendant Robert Bosch Tool Corporation ("Bosch") alleging infringement of various claims of U.S. Patent Nos. 6,308,059 (the "'059 patent") and 6,788,925 (the "'925 patent"). On September 22, 2006, a jury returned a verdict finding that the Bosch Power Box radio chargers at issue infringed certain claims of both patents-in-suit and awarded Black & Decker $1,300,000 for lost profits and $450,000 as a reasonable royalty. The jury also found that Bosch's infringement was willful. As the prevailing party, Black & Decker brings the present motions for attorney's fees, to amend the judgment to award enhanced damages, and prejudgment interest pursuant to 35 U.S.C. §§ 284, 285. For the following reasons, the Court denies Black & Decker's motion for attorney's fees under 35 U.S.C. § 285. The Court grants Black & Decker's motions under 35 U.S.C. § 284, enhancing Black & Decker's compensatory damages by 50 percent or $875,000, and awarding prejudgment interest in the amount of $132,447.

<u>ANALYSIS</u>

I. **Attorney's Fees – 35 U.S.C. § 285**

    A. **Legal Standard**

Section 285 of the Patent Act is an exception to the "American Rule" in which each party pays its own attorney's fees and expenses. *Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1329 (Fed. Cir. 2003); *Mathis v. Spears,* 857 F.2d 749, 758 (Fed. Cir. 1988) ("Congress enacted Section 285 to codify in patent cases the 'bad faith' equitable exception to the American Rule.") Based on the legislative history of Section 285, fee-shifting is "limited to circumstances in which it is necessary to prevent 'a gross injustice.'" *Forest Labs.,* 339 F.3d at 1329 (citing *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 472 (Fed. Cir. 1985) (quoting S.Rep. No. 79-1503 (1946))). "Recognizing the good faith/bad faith distinction, Congress expressly limited such awards to 'exceptional cases.'" *Mathis,* 857 F.2d at 758.

Awarding attorney's fees pursuant to 35 U.S.C. § 285 is a two-step process. *Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368, 1380 (Fed. Cir. 2005). First, the Court must determine whether Black & Decker has established that this is "an exceptional case" by clear and convincing evidence. *Id.*; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000). "Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311, 1321-22 (Fed. Cir. 2006).

If Black & Decker establishes that this case is exceptional, the Court then determines

whether an award of attorney's fees is appropriate under the circumstances. *See Perricone,* 432 F.3d at 1380; *see also Group One, Ltd. v. Hallmark Cards, Inc.,* 407 F.3d 1297, 1308 (Fed. Cir. 2005) ("court is not required to award attorney fees, even when there is an express finding of willful infringement"). More specifically, the decision to award attorney's fees is discretionary, permitting "the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Serio-US Indus.*, 459 F.3d at 1322 (citation omitted).

The jury's finding of willfulness satisfies Black & Decker's burden in establishing that this case is "exceptional" under the first step of the attorney's fees analysis. *See Group One, Ltd.,* 407 F.3d at 1308 ("express finding of willful infringement is a sufficient basis for classifying a case as "exceptional"). The Court thus turns to the discretionary criteria to determine whether attorney's fees are warranted under the circumstances. *See Serio-US Indus.,* 459 F.3d at 1322; *see also Juicy Whip, Inc. v. Orange Bang, Inc.,* 382 F.3d 1367, 1377 (Fed. Cir. 2004) ("A decision to award enhanced damages and attorney fees is one committed to the discretion of the trial court.").

**B.  Black & Decker's Arguments in Support of Attorney's Fees**

Black & Decker contends that Bosch's misconduct supports an award of attorney's fees under Section 285. *See nCube Corp. v. Seachange Int'l, Inc.,* 436 F.3d 1317, 1319 (Fed. Cir. 2006) (litigation misconduct and unprofessional behavior appropriate criteria to consider when determining attorney's fees). The Federal Circuit explains proper attorney conduct in patent litigation:

> An attorney's obligations to provide zealous advocacy on behalf of his client are not absolute and uncompromising, but must be viewed in light of his additional obligations as an officer of the court to promote the administration of justice and to comply with the court's rules, notices, and orders. Additionally, as with his obligations to his client, the attorney's obligations to the court are ongoing at every stage of the litigation and the attorney must continually reevaluate the positions advanced in light of both the development of the litigation itself and of the relevant case law affecting the litigation.

*Allen Eng'g Corp. v. Bartell Indus.,* 299 F.3d 1336, 1356 (Fed. Cir. 2002) (quoting *In re Solerwitz*, 848 F.2d 1573, 1577 (Fed. Cir. 1988)). Further, "[c]ounsel must remember that they are not only advocates for their clients; they are also officers of the court and are expected to assist the court in the administration of justice, particularly in difficult cases involving complex issues of law and technology." *Allen Eng'g Corp.*, 299 F.3d at 1356. In the context of Section 285 motions, it is the Court's "duty to refuse to condone behavior that exceeds reasonable litigation tactics." *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1575 (Fed. Cir. 1996). That being said, "the [C]ourt may consider the litigation actions of both sides in connection with § 285." *Id.*

### 1. Bosch's Pre-Trial Conduct

#### a. Discovery Disputes

Black & Decker lists certain discovery disputes to support its argument that Bosch engaged in misconduct in defending against this infringement action. Although these disputes show that the litigation was contentious, they do not support the conclusion that Bosch engaged in misconduct during discovery or that Bosch's pre-trial conduct warrants the award of attorney's fees. *See FieldTurf Intern., Inc. v. Sprinturf, Inc.,* 433 F.3d 1366, 1373 (Fed. Cir. 2006) (egregious conduct required to support fee-shifting).

For instance, Bosch filed an untimely discovery response, attempted to bring a defense

based on 35 U.S.C. §102(f) after the close of discovery, and may have asked a deponent improper questions. Black & Decker, on the other hand, acted similarly when it attempted to include a new version of the Power Box radio charger, the PB-10 Advanced, as an accused product and tried to offer new opinions of its expert, Andrew J. Neuhalfen, after the close of discovery. Because Black & Decker's own litigation conduct is a factor that the Court may consider in awarding attorney's fees, Bosch's pre-trial conduct is offset by Black & Decker's similar actions. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997).

### b.    Bosch's Contact with John Mizzi

Black & Decker also argues that Bosch's attorneys engaged in misconduct by misleading John Mizzi – an individual who may have been a co-inventor to the patents-in-suit – when Bosch contacted Mizzi during discovery. When Bosch contacted Mizzi, he as not an adverse party to this case, he had never been an employee of Black & Decker, and he was not a fact or expert witness for Black & Decker. Black & Decker nonetheless argues that an email from Bosch's counsel to Mizzi concerning Mizzi's inventions shows that Bosch's counsel lied about how they discovered Mizzi. Black & Decker, however, ignores the fact that counsel was trying to locate Mizzi after discovering Mizzi's name from Black & Decker's documents obtained during discovery. Further, Black & Decker argues that Bosch's counsel operated a "bait and switch" to induce Mizzi to talk to him by indicating that counsel was interested in licensing Mizzi's patents. Black & Decker's assertion is based on Mizzi's testimony in which ***Mizzi believed*** that counsel wanted to license his patents after Mizzi discovered that counsel practiced at a patent law firm. These factors do not warrant attorneys' fees.

### 2.      Bosch's Conduct at Trial

Black & Decker also argues that Bosch's misconduct during trial supports an award for attorney's fees under Section 285.  Black & Decker lists a number of incidences in support of its argument, which the Court addresses in turn.

### a.      Potter's Testimony

Black & Decker contends that Bosch's motion to strike certain testimony given by its Rule 30(b)(6) witness, Christine Potter, evidences Bosch's misconduct at trial.  Specifically, Bosch made several objections to Potter's testimony about copying, to which the Court overruled based on its relevance to questions of willfulness and non-obviousness.  Despite the Court's ruling, Bosch filed a bench memorandum seeking to strike Potter's testimony.  In its memorandum, Bosch fleshed out the objections it made in court.  Although the Court denied Bosch's request to strike Potter's testimony, Bosch's attempt to explain its objections is not a sufficient basis for the Court to award attorney's fees under the circumstances.  *See FieldTurf Intern.,* 433 F.3d at 1373.

### b.      Cheung's Opinion Testimony

Next, Black & Decker argues that Bosch's bench memorandum concerning the expert testimony of Thompson Cheung was improper.  To recap, the Court concluded that Cheung could not testify as an expert because Cheung had not provided an expert report and Bosch did not make him available for a deposition.  Despite the Court's order, Bosch's counsel attempted to elicit expert testimony from Cheung during trial.  Black & Decker, however, similarly attempted to elicit trial testimony in violation of a court order.  More specifically, in a motion in limine, the Court precluded Black & Decker's technical expert from opining that the Power Box

met a certain claim limitation, yet on two separate occasions, Black & Decker's counsel attempted to elicit this exact testimony from its expert. Again, Black & Decker's own litigation conduct ameliorates Bosch's attempt to elicit Cheung's testimony. *See Motorola, Inc.,* 121 F.3d at 1468.

### c.  Gray Video

Black & Decker further argues that Bosch's counsel altered the Gray video, which was demonstrative exhibit number 113. At trial, the relevant witness, Rick Gray, admitted that the video used during his direct examination was missing a demonstration of him inserting a battery into the Power Box. This testimony, however, does not establish that Bosch purposely or maliciously altered the video, as Black & Decker contends. Instead, Gray's testimony merely shows that a different version of the video was used at trial. Thus, this alleged misconduct does not weigh against Bosch in the Court's discretionary assessment of attorney's fees.

### d.  Grundig Radio

Black & Decker also argues that "Bosch's counsel obstructed every attempt by Black & Decker to learn about the Grundig radio," but then wanted to present it at trial for demonstrative purposes. Black & Decker, however, does not give a sufficient factual basis for its argument that "Bosch's counsel obstructed every attempt by Black & Decker to learn about the Grundig radio." Furthermore, although the Court does not condone Bosch's last minute attempt to use the Grundig radio as demonstrative evidence in support of its Rule 30(b)(6) witness, last minute attempts such as this are all too common in federal court litigation. Accordingly, Bosch's conduct did not exceed reasonable litigation tactics as Black & Decker suggests. *See Sensonics, Inc.*, 81 F.3d at 1575.

### e.     Domes' Testimony

Moreover, Black & Decker argues that Bosch's attempt to seek testimony from the inventor of the '059 and '925 patents, Joseph Domes, on the meaning of the claim term "regardless" was inappropriate even though the parties did not request the Court to construe the term "regardless" during the *Markman* proceedings.  Bosch based its attempt to define "regardless" through Domes with controlling and persuasive legal authority, although it was too little, too late.  Even though Bosch's attempt was unsuccessful, Bosch's conduct does not exhibit unprofessional behavior or litigation misconduct to the extreme of awarding attorney's fees.

### f.     Reference to Smith Patents

Black & Decker also asserts that counsel's reference to the Smith Patents during trial constitutes misconduct supporting an award of attorney's fees.  The Court granted Black & Decker's motion in limine to preclude the use of the Smith patents at trial.  The Court, however, allowed Bosch to ask Potter questions about the DeWalt radio charger and to ask any follow up questions about what she understood.  Despite Potter's testimony that she was only aware of the Domes patents, Bosch vaguely referred to "other patents."  Further, in discussing the Assignment Agreement and a possible interference, Bosch informed the Court that it might refer to "other patents" when Domes testified.  The Court explained to Bosch that it could not do so.  In short, Bosch's references to the other patents is not the type of egregious conduct that warrants fee-shifting under Section 285.  *See FieldTurf Intern.,* 433 F.3d at 1373.

### g.     Closing Arguments

Finally, Black & Decker contends that counsel's mention of Roger Greer's potential testimony during closing arguments after the Court precluded Bosch from calling Greer as a trial

witness also supports an award of attorney's fees. Black & Decker, however, acted similarly in its closing argument by using an inaccurate demonstrative exhibit, which the Court had previously instructed the jury to disregard. Further, despite controlling Federal Circuit law that "the failure to obtain an exculpatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable," Black & Decker alerted the jury to the fact that Bosch failed to present evidence concerning legal advice on infringement. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1351 (Fed. Cir. 2004) (en banc). Again, because the Court may take Black & Decker's litigation tactics into consideration when determining attorney's fees, *see Sensonics, Inc.,* 81 F.3d at 1575, Bosch's conduct during closing arguments does not support an award of attorney's fees.

### C. Conclusion

As the Federal Circuit instructs, "[t]he trial judge is better able to assess the conduct of parties appearing before it than is this court. Questions of misconduct often involve the tone and tenor of advocacy, rather than the literal words of the advocate." *Motorola, Inc.*, 121 F.3d at 1468. Although Bosch's trial strategy and motion practice may have been unorganized or occasionally misguided, the tenor and tone of Bosch's advocacy was nonetheless professional. In addition, the substantive positions argued by both parties were – for the most part – meritorious. *See id.* Despite the parties' differences in this matter, Bosch's and Black & Decker's actions show that counsel rigorously advocated on behalf of their clients and assisted the Court in this matter. *See Allen Eng'g Corp.,* 299 F.3d at 1356. Put differently, Bosch's actions did not exceed the permissible bounds of zealous advocacy or reasonable litigation

tactics. *See Allen Eng'g Corp.,* 299 F.3d at 1356; *Sensonics, Inc.*, 81 F.3d at 1575. Thus, after

weighing the tangible and intangible factors in this matter, the Court, in its discretion, denies

Black & Decker's request for attorney's fees under Section 285.[1] *See Serio-US Indus.*, 459 F.3d

at 1322.

## II.    Enhanced Damages – 35 U.S.C. § 284

### A.    Legal Standard

Next, Black & Decker seeks treble damages for Bosch's willful infringement. Under

Section 284, the Court "may increase the damages up to three times the amount found or

assessed." *Knorr-Bremse,* 383 F.3d at 1342 (citing 35 U.S.C. § 284). As the statute indicates,

the Court may enhance damages without awarding the maximum of treble damages. *See*

*Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1378 (Fed. Cir. 2002) (court may

consider lesser multiples of damages).

Whether to award enhanced damages under Section 284 is a two-step process. *Mentor*

*H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001). First, the trier

of fact must determine if the infringer is guilty of willful conduct. *Id.*; *see also nCube Corp.,*

436 F.3d at 1319. Here, the first step is satisfied because the jury found Bosch's conduct willful.

*See Transclean Corp.*, 290 F.3d at 1377.

The jury's finding of willful infringement authorizes, but does not mandate, an award of

---

[1] Although the "closeness of the case" is a factor the Court may consider in making its discretionary determination under Section 285, *see Serio-US Indus.*, 459 F.3d at 1322, Black & Decker does not raise this argument in its legal memoranda for attorney's fees. This factor, however, is discussed below under the Court's analysis pursuant to Section 284. Even if the Court were to consider the closeness of the case in assessing attorney's fees, this factor would not tip the scale in favor of granting Black & Decker's attorney's fees motion under the circumstances.

enhanced damages. *Group One, Ltd.,* 407 F.3d at 1308; *Electro Scientific Indus., Inc. v. General Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001). Hence, under the second step of the analysis, the Court "determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996); *see also Mentor H/S, Inc.,* 244 F.3d at 1380. Specifically, the Court considers the following factors, commonly known as the *Read* factors, when determining whether damages should be increased under Section 284: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation to harm; and (9) whether the infringer attempted to conceal its misconduct. *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *abrogated in part on other grounds, Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc)). As the *Read* decision instructs, "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp.*, 970 F.2d at 826; *see also Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1365 (Fed. Cir. 1998) ("In exercising this discretion, the trial court considers the weight of the evidence of the infringer's culpability.")

**B.      Read Factors**

Because the jury's finding of willfulness satisfies the first step in the Court's enhanced damages analysis, *see Transclean Corp.,* 290 F.3d at 1377, the Court turns to the *Read* factors to determine if enhanced damages are appropriate under the totality of the circumstances. The Federal Circuit lends the following guidance, "[a]fter presiding over the preparation and trial of the case, the trial judge can best weigh the relevant considerations, such as the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation." *Perricone,* 432 F.3d at 1380-81.

### 1. Copying

Black & Decker claims that Bosch copied key features of Black & Decker's radio charger based on trial testimony that Bosch sent the DeWalt radio charger to its supplier, Glory Horse. Black & Decker specifically relies on the trial testimony of Bosch's lead engineer, Steve Cole, and Glory Horse's principal, Thompson Cheung, that Glory Horse received a DeWalt radio charger prior to designing the Bosch Power Box. Both witnesses testified that Glory Horse engineers studied the DeWalt radio charger, disassembled it, and examined the internal circuitry.

Further, there is trial testimony to support the inference that Glory Horse and Bosch copied certain features of the DeWalt radio charger and incorporated those features into the Bosch Power Box. Black & Decker points to the example that in Bosch's preliminary concept specification sent to Glory Horse, it wanted the following three features (1) the "capacity to be operated from a Bosch battery," (2) an "internal charger inside the radio housing," and (3) "ruggedness." Other evidence presented at trial indicates that Bosch and Glory Horse copied (1)

the "ability to be powered by an AC power outlet," (2) the "ability to be powered by power tool batteries," (3) an "integrated battery charger," and (4) the "ability to be played from batteries and charge multiple Bosch batteries."

Thus, there is evidence in the record that Bosch used the DeWalt radio charger as a template and copied Black & Decker's ideas and design. Despite Bosch's arguments to the contrary, there is no requirement that there must be "slavish copying" to conclude that the infringer copied the patentee's invention. *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1414 (Fed. Cir. 1996). As such, this *Read* factor weighs in favor of granting Black & Decker's motion for enhanced damages.

### 2. Investigation of Patents-In-Suit

Next, the Court examines the second *Read* factor, namely, whether Bosch conducted an investigation into the scope of the patents-in-suit to form a good-faith belief of non-infringement and invalidity. *See Metabolite Labs., Inc. v. Laboratory Corp. of Am. Holdings,* 370 F.3d 1354, 1370 (Fed. Cir. 2004). "Good faith may normally be shown by obtaining the advice of legal counsel as to infringement or patent validity." *Liquid Dynamics Corp.,* 449 F.3d at 1225; *see also Read Corp.,* 970 F.2d at 828 ("affirmative duty normally entails obtaining advice of legal counsel although the absence of such advice does not mandate a finding of willfulness").

Although Bosch contends that it sought advice from its litigation counsel regarding invalidity and infringement, it does not set forth specific evidence concerning counsel's opinion. Instead, Bosch argues that it decided not to waive the attorney-client privilege for these opinions, and thus, under Federal Circuit law, it should not be penalized for its actions. *See Knorr-Bremse,* 383 F.3d at 1351 ("the failure to obtain an exculpatory opinion of counsel shall

no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable").  In *Knorr-Bremse*, "the affirmative duty of due care to avoid infringement was reiterated, but it was found no longer appropriate to draw an adverse inference with respect to willful infringement from failure to obtain legal advice."  *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 1378 (Fed. Cir. 2005).  Thus, under the circumstances, the Court cannot infer that the legal advice Bosch obtained – or did not obtain – does not support a good-faith basis for Bosch's actions.  *See Third Wave Tech. v. Stratagene Corp.,* 405 F.Supp.2d 991, 1016-17 (W.D. Wis. 2005).

Nevertheless – based on the detailed willfulness jury instruction to which both parties agreed – inherent in the jury's finding of willfulness was the jury's conclusion that Bosch did not have a good faith basis for its actions.  *See Jurgens*, 80 F.3d at 1572.  The *Jurgens* court held that "[a]lthough a trial court many times has discretion to weigh the closeness of the case and the scope of the infringer's investigation in deciding whether to increase a damages award, it does not have discretion to reweigh this evidence once the matter has been decided by the jury and the court finds evidence sufficient to support the jury determination."  *Id.*  Unfortunately, neither party addresses how the Federal Circuit's decision in *Knorr-Bremse* interfaces with the *Jurgens* holding that the Court cannot reweigh the evidence after the jury has determined willfulness.

In any event, there is evidence in the record –  not pertaining to Bosch's legal advice – that supports the jury's conclusion that Bosch did not have a good faith basis for its actions.  For example, Bosch's engineer Steve Cole testified that he was not aware of anyone from engineering who took steps to avoid potential infringement of the patents-in-suit.  Further, Bosch did not present any evidence that it attempted to design around the patents.

Meanwhile, Bosch argues that it acted in good faith based on its legitimate defenses to Black & Decker's claims of infringement. Specifically, Bosch states:

> In this case, Black & Decker filed this suit on December 8, 2004, just over one month after sending the cease-and-desist letter. As discussed above, after the lawsuit was filed, Bosch continuously presented good faith, legitimate defenses to Black & Decker's claims of infringement. Bosch's litigation defenses demonstrate that Bosch had a good-faith belief, based on the investigations of, and advice from, its litigation counsel, that the Domes Patents were invalid and not infringed. Moreover, these defenses had merit – the jury found two of four asserted independent claims invalid and not infringed.

(R. 551-1, Bosch's Mem. Opposition to Enhanced Damages, at 6.) Despite Black & Decker's argument to the contrary, presenting infringement defenses in an "aggressive yet fair manner" is a factor the Court may consider when determining good faith in the context of enhanced damages. *See, e.g., Ristvedt-Johnson, Inc. v. Brandt, Inc.,* 805 F.Supp. 557, 569 (N.D. Ill. 1992) (Rader, J., sitting by designation). Nonetheless, Bosch's "defenses prepared for [ ] trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as 'due care' before undertaking any potentially infringing activity." *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc*., 246 F.3d 1336, 1352 (Fed. Cir. 2001). Thus, Bosch's legitimate defenses to this infringement action do not save the day.

Accordingly, because there is evidence in the record supporting the jury's finding that Bosch did not have a good faith basis for its actions, this *Read* factor weighs in favor of awarding enhanced damages. *See Jurgens,* 80 F.3d at 1572.

### 3. Litigation Misconduct and Duration

Black & Decker also argues that Bosch's litigation misconduct and the duration of this alleged misconduct support enhanced damages under the circumstances. As discussed in detail under the attorney's fees analysis, Bosch's counsel acted professionally during the present

litigation.  Indeed, both sides exhibited rigorous advocacy on behalf of their clients.  *See Allen Eng'g Corp.,* 299 F.3d at 1356.  As such, these two *Read* factors weigh against enhanced damages.

### 4.     Bosch's Size & Financial Condition

Black & Decker also contends that Bosch's size and financial condition support enhanced damages.  Based on trial testimony, Bosch is a large corporation with millions of dollars in sales each year.  As such, Bosch's size and financial condition suggest that enhanced damages would not significantly jeopardize Bosch's financial well-being.  *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 867 (Fed. Cir. 1997); *Odetics, Inc. v. Storage Tech. Corp.,* 14 F.Supp. 2d 800, 803 (E.D. Va. 1998).  Therefore, this factor weighs in favor of awarding enhanced damages.

### 5.     Closeness of Case

Next, the Court examines the closeness of the case, namely, whether the case was "hard fought" and if jury could have found for Bosch on the issues of infringement, validity, or willfulness.  *See Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1314 (Fed. Cir. 2002).  Here, Bosch contends that the questions of infringement and invalidity were close because the jury found two of the four asserted independent claims invalid and not infringed.  The jury, however, also found that every asserted claim of the '059 patent was valid and infringed.  Therefore, the case was not as close as Bosch suggests.  On the other hand, there is no doubt that this matter was "hard fought" and that Bosch had legitimate defenses to Black & Decker's infringement claims.

As to the closeness of the jury's willfulness finding, the Court is cautious not to

impermissibly reweigh the evidence underlying this finding. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1310 (Fed. Cir. 2001) ("a judge cannot substitute his or her factual determination for a jury's willfulness finding"); *see also Jurgens*, 80 F.3d at 1572. Because sufficient evidence supports the jury's finding of willfulness, the Court declines to reweigh the evidence as Bosch suggests. Accordingly, this *Read* factor weighs in favor of enhanced damages.

### 6. Remedial Actions

There is no indication from the record that Bosch took any remedial actions to avoid infringing the patents-in-suit. Indeed, Bosch acknowledges that it continued to sell the Power Box radio after it received Black & Decker's cease-and-desist letter in November 2004. Bosch argues that it believed that the Power Box did not infringe the patents-in-suit and that these patents were invalid, thus taking any remedial measures would have been antithetical to Bosch's good-faith belief of non-infringement and invalidity. Although Bosch makes a good point, there is no evidence in the record that Bosch took any remedial steps after the jury returned the verdict that the Power Box did infringe the patents-in-suit. *See, e.g., Applera Corp. v. MJ Research, Inc.,* 372 F.Supp.2d 233, 243-44 (D. Conn. 2005). Therefore, this factor weighs in favor of awarding enhanced damages.

### 7. Bosch's Motivation to Harm

Black and Decker further argues that "Bosch had every intention to harm Black & Decker" because the DeWalt radio charger was a successful product and that Black & Decker had created the jobsite radio market. Black & Decker also bases its argument on the fact that Bosch's attorney contacted the inventor about licensing the '059 and '925 patents. This

evidence, however, does not show a motivation to harm. Instead, it reflects Bosch's recognition of the DeWalt radio's success and that Bosch wanted to compete in the jobsite radio market. The Federal Circuit has addressed a similar situation concluding that competition in the market place "should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them. The world of competition is full of "fair fights," of which this suit seems to be one." *State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1235-36 (Fed. Cir. 1985). Here, the record does not reflect that Bosch was seeking to harm Black & Decker. Accordingly, the "harm" factor weighs against awarding enhanced damages.

### 8. Concealment

Black and Decker makes no argument that Bosch attempted to conceal its infringement. In fact, Bosch advertised the Power Box, and thus this *Read* factor weighs in Bosch's favor.

### C. Conclusion

Although the *Read* court lists nine factors for the Court to consider and four of those factors weigh against awarding enhanced damages, the Court's analysis is qualitative, not quantitative because "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp.*, 970 F.2d at 826. After presiding over the preparation and trial of the case, the Court concludes that imposition of punitive sanctions is warranted based on evidence of Bosch's copying, Bosch's lack of a good faith basis for its actions, its size and financial condition, the lack of closeness in this case, and Bosch's failure to take remedial actions. *See Perricone,* 432 F.3d at 1380-81; *Read Corp.*, 970 F.2d at 826. The evidence supporting these five *Read* factors reflects the requisite culpability to award enhanced damages

to Black & Decker. *See Johns Hopkins Univ.,* 152 F.3d at 1365; *Read,* 970 F.2d at 826. Bosch's level of culpability, however, was not so egregious as to support trebling the compensatory damages. *See Read,* 970 F.2d at 828 ("where the maximum amount is imposed ... the court's assessment of the level of culpability must be high"). Because Bosch did not act in "wanton disregard" of the patents-in-suit, *see id*. at 826, the Court, in its discretion, enhances Black & Decker's compensatory damages by 50 percent or $875,000. *See Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 794 n.4 (Fed. Cir. 1995) ("amount of enhancement must bear some relationship to the level of culpability of the conduct").

## III.    Pre-Judgment Interest

### A.    Legal Standard

Last, Black & Decker seeks prejudgment interest pursuant to 35 U.S.C. § 284. "The purpose of prejudgment interest is to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Beatrice Foods Co. v. New England Printing & Lithographing Co.,* 923 F.2d 1576, 1580 (Fed. Cir. 1991) (citation omitted). Courts ordinarily award prejudgment interest under Section 284 absent justification for limiting such interest. *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 654-57, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *Sensonics, Inc.,* 81 F.3d at 1574 ("prejudgment interest is the rule, not the exception"). As the Supreme Court articulated, "[a]n award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." *Devex Corp.,* 461 U.S. at 656.

## B.        Interest Rate

Bosch does not dispute that Black & Decker is entitled to prejudgment interest.  Instead, Bosch contends that Black & Decker's request for the prejudgment interest rate to be based on the prime rate is inappropriate under the circumstances.  "A trial court is afforded wide latitude in the selection of interest rates." *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545 (Fed. Cir. 1991).  Indeed, not only is the rate of prejudgment interest left to the Court's discretion, whether it should be compounded or simple interest is also a discretionary determination. *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 791 (Fed. Cir. 1990).

Bosch specifically argues that the interest rate based on the market yield on U.S. Treasury securities at 1-year constant maturity is a more appropriate rate than the prime rate. *See* 28 U.S.C. § 1961(a) (post judgment interest rate based on T-Bill rate).  Bosch makes this argument based on the premise that Black & Decker should not be compensated for the risk of default which is not present under the circumstances because the jury already decided the amount of damages and Bosch has the ability to pay.  (*See* "Bosch's Size & Financial Condition", II.B.4.)[2]  The Court agrees.

"The prime rate of interest is the benchmark rate for the banks' most credit-worthy customers, but even blue-chip debtors are more likely to default than is the United States government, so the prime rate exceeds the T-Bill rate ... [b]ecause the prime rate includes some compensation for the risk of non-payment...." *Koopmans v. Farm Credit Servs. of Mid-America, ACA,* 102 F.3d 874, 875 (7th Cir. 1996).  Accordingly, if the Court were to use the prime rate,

---

[2]  In fact, Black & Decker contends that "Bosch generates billions of dollars of annual revenue."  (R. 555-1, Black & Decker's Mem. in Support of Enhanced Damages, at 13.)

Black & Decker would be compensated for the risk of non-repayment – a risk that does not exist under the circumstances. Here, the T-Bill rate is more appropriate because it will adequately compensate Black & Decker for its "foregone use of the money between the time of infringement and the date of the judgment" without additional compensation. *See Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming district court's award of interest at T-Bill rate to "adequately compensate plaintiff for the lost use of its royalties"); *see also National Presto Indus., Inc. v. Black & Decker, Inc.,* No. 89 C 8978, 1992 WL 125559, at *8 (N.D. Ill. 1992) (patent owner "will be fully compensated by being given the interest rate it could have earned if it had had the money to invest, the interest rate that is statutorily established for post-judgment interest:  the Treasury Bill rate.")

Finally, the Court concludes that compounding interest monthly is appropriate because Black & Decker lost royalties and profits on a continuous basis, and thus Black & Decker would have had access to these royalties and profits at least by the end of each month.  In addition, Bosch does not object to compounding interest on a monthly basis.  As such, the Court awards Black & Decker prejudgment interest in the amount of $132,447.

## <u>CONCLUSION</u>

For these reasons, the Court denies Black & Decker's Motion for Attorney's Fees and grants Black & Decker's Motion for Enhanced Damages. The Court awards Black & Decker $132,447 in prejudgment interest.

**Dated:** November 20, 2006

ENTERED

**AMY J. ST. EVE**
**United States District Court Judge**