IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and ) | |
| BLACK & DECKER (U.S.) INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 04 C 7955 |
| v. ) | |
| ) | |
| ROBERT BOSCH TOOL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") brought this lawsuit against Defendant Robert Bosch Tool Corporation ("Bosch") alleging infringement of various claims of U.S. Patent Nos. 6,308,059 (the "'059 patent") and 6,788,925 (the "'925 patent"). On September 22, 2006, a jury returned a verdict finding that the Bosch Power Box radio chargers at issue, namely, the PB-10 and the PB-10-CD, infringed certain claims of both patents-in-suit. Before the Court is Black & Decker's Motion for a Permanent Injunction pursuant to 35 U.S.C. § 283. For the following reasons, the Court, in its discretion, grants Black & Decker's Motion for a Permanent Injunction as to the Bosch Power Box radio chargers Models PB-10 and PB-10-CD.

## LEGAL STANDARDS

### I. Permanent Injunctions Under the Patent Act

Section 283 of title 35 states: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, ___U.S.___, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006).

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*; *see also Abbott Labs. v. Andrx Pharms., Inc.,* 452 F.3d 1331, 1334 (Fed. Cir. 2006) (decision to grant or deny injunction within sound discretion of district court). The *eBay* Court specifically held that equitable injunction standards apply equally to cases brought under the Patent Act. *See eBay,* 126 S.Ct. at 1839. Thus, the Supreme Court reversed the Federal Circuit's traditional rule that "courts will issue permanent injunctions against patent infringement absent exceptional circumstances." *Monsanto Co. v. Scruggs,* 459 F.3d 1328, 1341-42 (Fed. Cir. 2006).[1]

## II. Compliance with Federal Rule of Civil Procedure 65(d)

Federal Rule of Civil Procedure 65(d) governs the proper scope and form of permanent injunctions:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts

---

[1] Although Black & Decker cites the Supreme Court's decision in *eBay*, it fails to discuss the *eBay* Court's reversal of the Federal Circuit's rule that an injunction generally issues when infringement has been determined.

> sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

"[T]he Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute," because "[s]uch injunctions increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful." *International Rectifier Corp. v. IXYS Corp.,* 383 F.3d 1312, 1316-17 (Fed. Cir. 2004) (citation omitted); *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476 (Fed. Cir. 1993) ("Supreme Court does not countenance overly broad injunctions due to the threat of costly contempt proceedings for acts unrelated to those originally judged unlawful.") Furthermore, Rule 65(d) "requires an injunction to prohibit only those acts sought to be restrained," namely, "infringement of the patent by the devices adjudged to infringe and infringement by devices no more than colorably different therefrom." *International Rectifier,* 383 F.3d at 1317. In other words, "an injunction cannot impose unnecessary restraints on lawful activity." *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002).

## ANALYSIS

**I.  New Power Box Radio – PB-10-CD Advanced**

On August 23, 2006, the Court granted Bosch's motion in limine to preclude Black & Decker from raising a new accused product at trial, namely, the Bosch Power Box Model PB-10-CD Advanced. (*See* R. 375-1.) Accordingly, the parties did not try before the jury the issue of whether the PB-10-CD Advanced infringed Black & Decker's patent rights. Instead, the PB-10-CD Advanced is the subject of another lawsuit that Black & Decker filed in August 2006, Case No. 06 C 4440. Thus, at issue before the Court is an injunction pertaining to the old Power Box

radios that were the subject matter of this lawsuit – the PB-10 and the PB-10-CD.

Nevertheless, Black & Decker argues that the Court should enjoin Bosch from making, selling, using, offering, or importing not only the old Power Box radio chargers, but the new Power Box radio – the PB-10-CD Advanced – even though it was not the subject of this lawsuit. Black & Decker contends that the permanent injunction must include the PB-10-CD Advanced because it is "no more than colorably different" than the old Power Box radio chargers. *See International Rectifier,* 383 F.3d at 1317. In other words, Black & Decker wants the Court to decide whether the PB-10-CD Advanced infringes the continuation of the '059 and '925 patents – specifically U.S. Patent No. 7,043,283 – although this exact infringement lawsuit is pending before another judge in this district. The Court rejects Black & Decker's argument because whether the PB-10-CD Advanced is "no more than colorably different" than the old Power Box radios is an issue that is not properly before the Court.

The Federal Circuit explained the "no more than colorably different" standard in *KSM Fastening Sys., Inc. v. H.A. Jones Co.,* 776 F.2d 1522 (Fed. Cir. 1985). Specifically,

> Where the alteration in the device is "merely colorable" and obviously was made for the purpose of evading the decree without essential change in the nature of the device, the courts will try the question of infringement by the new device in proceedings for contempt for violation of the injunction. But where infringement by the new device is not clear on the face of the matter, and there are substantial issues for the determination of the court, the plaintiff may not have them determined in contempt proceedings, but must bring a supplemental bill for an injunction covering the new device, or institute a wholly new suit for such an injunction.

*Id.* at 1531 (citations omitted). Based on this standard, an infringer who has made a good-faith effort to modify an infringing device should not be punished by contempt charges resulting from a permanent injunction on other, non-adjudged devices. *Arbek Mfg., Inc. v. Moazzam,* 55 F.3d

1567, 1570 (Fed. Cir. 1995); *see also Abbot Labs. v. Apotex, Inc.*, ___ F.Supp.2d ___, No. 97 C 7515, 2006 WL 2884317, at *4 (N.D. Ill. Oct. 6, 2006) (Posner, J., sitting by designation). Instead, "the modifying party generally deserves the opportunity to litigate the infringement question at a new trial, 'particularly if expert and other testimony subject to cross-examination would be helpful or necessary.'" *Arbek Mfg.,* 55 F.3d at 1570 (quoting *KSM Fastening,* 776 F.2d at 1531).

Here, there is evidence in the record indicating that the PB-10-CD Advanced has different features from the old Power Box radios, including a new tuner/amplification circuit board, and thus infringement by the new Power Box radio would not "clear on the face of the matter." *See KSM Fastening,* 776 F.2d at 1531. In fact, Black & Decker agrees that "[w]hether the circuitry of the 'Advanced' Power Box is no more than a colorable change from the infringing PB-10 and PB-10-CD Power Box products should be determined in a later proceeding," although Black & Decker ignores the fact that it has already filed this later proceeding. (R. 510-1, Black & Decker Reply Brief, at 4.) Thus, under Federal Circuit precedent and the circumstances in this case, the appropriate way of addressing whether the PB-10-CD Advanced infringes the continuation of the patents-in-suit is to proceed by way of Black & Decker's new lawsuit. *See KSM Fastening,* 776 F.2d at 1532.

The Court thus turns to the equitable factors as recently reiterated by the Supreme Court in *eBay* to determine whether Black & Decker is entitled to a permanent injunction regarding the PB-10 and PB-10-CD radio chargers.

**II.    Four Factor Permanent Injunction Test**

    **A.    Irreparable Injury & Remedies Available at Law**

"The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. Because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Reebok Int'l, Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1557 (Fed. Cir. 1994) (internal citation omitted).

### 1. Continuing Sale of Old Power Box Radios

First, Bosch contends that Black & Decker has failed to establish that it will suffer irreparable harm absent a permanent injunction because Bosch stopped selling the old Power Box radio chargers approximately a year ago, no longer makes the infringing products, and has no inventory of the old Power Box radios. Instead, since 2005, Bosch has been manufacturing and selling the PB-10-CD Advanced which was not adjudicated in this matter.

Bosch's cessation of the production and sales of the old Power Box radios is not – in and of itself – a sufficient reason to deny a permanent injunction. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1282 (Fed. Cir. 1988). Instead, there must also be some persuasive evidence that further infringement will not take place. *See id.* Here, Black & Decker argues that it would be irreparably harmed even though Bosch has stopped producing and selling the old Power Box radios because Black & Decker found the old Power Box radios for sale at Amazon.com. This evidence works against the conclusion that further infringement by the old Power Box radios will not take place. *See W.L. Gore & Assoc., Inc.,* 842 F.2d at 1282. Furthermore, the Bosch web site still featured the old Power Box radios as late as October 11, 2006. As such, Black & Decker has set forth evidence that future infringement by the PB-10 and

PB-10-CD might take place.

### 2. Harm to Reputation

Next, Black & Decker asserts that it has suffered irreparable harm to its reputation by the infringing radio chargers. Indeed, the harm to reputation resulting from confusion between products "is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok*, 32 F.3d at 1558. Because Black & Decker has presented evidence that its reputation as an innovator in the jobsite radio market may be harmed by the continued selling and marketing of the old Power Box radios, this factor weighs in favor of a permanent injunction.

### 3. Loss of Market Share

While Bosch was selling the infringing old Power Box radio chargers, Black & Decker contends that it lost market share. Specifically, Black & Decker sets forth trial testimony that it lost sales of cordless power tools because it marketed the DeWalt radio charger and its cordless power tools together. Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm. *See Tivo, Inc. v. Echostar Comm'ns Corp.,* 446 F.Supp.2d 664, 669-670 (E.D. Tex. 2006). Under such circumstances, a patent owner's right to exclude "cannot be compensated through monetary damages," especially "because it is impossible to determine the portions of the market the patent owner would have secured but for the infringer or how much damage was done to the patent owner's brand recognition or good will due to the infringement." *z4 Tech., Inc. v. Microsoft Corp.,* 434 F. Supp. 2d 437, 441 (E.D. Tex. 2006); *see also Reebok Int'l,* 32 F.3d at 1557. Accordingly, Black & Decker's loss of market share weighs in favor of granting its motion.

7

### III. Balance of Hardship

Bosch contends that the balance of hardship factor weighs in its favor because Black & Decker will immediately file contempt proceedings against Bosch relating to Bosch's sales of the new Power Box radio, the PB-10-CD Advanced. As discussed above, the PB-10-CD Advanced is not before the Court. Accordingly, Bosch's argument does not establish that it will suffer any hardship if it were enjoined from selling the old Power Box radios.

Meanwhile, this is not a situation where Bosch will be driven out of business. *See, e.g., Canon, Inc. v. GCC Int'l, Ltd.,* 450 F.Supp.2d 243, 245-57 (S.D.N.Y. 2006). As Bosch admits, it stopped making the infringing products over a year ago and presently sells the PB-10-CD Advanced. Therefore, the balance of hardship factors tips in favor of Black & Decker because the harm cause by future infringement by the PB-10 and PB-10-CD radio charges outweighs any hardship that Bosch may experience. *See, e.g., Tivo, Inc.,* 446 F.Supp.2d at 670.

### IV. Public Interest

In general, public policy favors the enforcement of patent rights. *See Abbott Labs. v. Andrx Pharms., Inc.,* 452 F.3d 1331, 1348 (Fed. Cir. 2006); *PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1567 (Fed. Cir. 1996). Here, a jury found that the old Power Box radios not only infringed the patents-in-suit, but that Bosch's conduct was wilful. Under these circumstances, the public interest will not be disserved by a permanent injunction because it provides Black & Decker with an adequate remedy and allows it to enforce its patent rights. *See Tivo, Inc.*, 446 F.Supp.2d at 670. Thus, this factor supports Black & Decker's motion for a permanent injunction.

### V. Permanent Injunction Order

The four equitable factors recently reiterated by the Supreme Court in *eBay* weigh in favor of granting Black & Decker's Motion for a Permanent Injunction regarding the PB-10 and PB-10-CD radio chargers. The Court has wide latitude in framing permanent injunctions within the parameters of Rule 65(d). *See International Rectifier,* 383 F.3d at 1317. Accordingly, the Court adopts, in part, Black & Decker's Proposed Order with the following changes:

> 1. The Court eliminates the language at the end of the first paragraph, namely, "given the alleged unimportance of a charger feature in the Bosch radio chargers sold under the name Power Box,"
>
> 2. The Court adds language to (1) so the subsection reads in entirety "from making, using, selling, offering or importing the Bosch Power Box Models PB-10 and/or PB-10-CD radio chargers or any merely colorable imitations thereof, except for the Bosch Power Box Model PB-10-CD Advanced, which is the subject matter of another lawsuit, Case No. 06 C 4440, in the United States District Court for the Northern District of Illinois;"
>
> 3. The Court eliminates the following language from subsection (2): "and any subsequent modifications of those products that are no more than colorably different therefrom, regardless of trade name or model number under which those products are sold;"

(R. 490-3, Proposed Order). Black & Decker must file the amended Proposed Order by December 6, 2006, along with the electrical schematics set forth in the original Proposed Order.

**CONCLUSION**

For these reasons, the Court, in its discretion, grants Black & Decker's Motion for a Permanent Injunction pursuant to 35 U.S.C. § 283 regarding the old Bosch Power Box radio chargers, Models PB-10 and PB-10-CD. The permanent injunction does not pertain to the new Power Box radio charger, Model PB-10-CD Advanced, which is the subject of another lawsuit in this district.

**Dated:** November 29, 2006

                                      **ENTERED**

                                      *[signature]*

                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**