IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER INC. and <br> BLACK & DECKER (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT BOSCH TOOL CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> )    No. 04 C 7955 <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") brought the present lawsuit against Defendant Robert Bosch Tool Corporation ("Bosch") alleging infringement of various claims of U.S. Patent Nos. 6,308,059 (the "'059 patent") and 6,788,925 (the "'925 patent"). Specifically, Black & Decker accused Bosch's Power Box radio of infringing each of the patents-in-suit that relate to rugged jobsite radios. On September 22, 2006, a jury returned a verdict finding that the Bosch Power Box radio chargers infringed certain claims of both patents-in-suit. The jury also found that Bosch's infringement was willful. Before the Court is Bosch's Motion for Judgment as a Matter of Law or to Alter the Judgment as to Willful Infringement and for a New Trial pursuant to Federal Rules of Civil Procedure 50(b), 59(a), and 59(e). For the following reasons, the Court denies Bosch's motion.

## LEGAL STANDARDS

The law of the Seventh Circuit controls motions under Federal Rules of Civil Procedure 50 and 59 because they involve procedural issues not unique to patent law. *See Primos, Inc. v. Hunter's Specialties, Inc.,* 451 F.3d 841, 847 (Fed. Cir. 2006); *NTP, Inc. v. Research in Motion,*

*Ltd.,* 418 F.3d 1282, 1324 (Fed. Cir. 2005).

## I. Motion for Judgment as a Matter of Law – Rule 50(b)

When ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not re-weigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see* Fed.R.Civ.P. 50(b). Instead, the Court views the evidence and all reasonable inferences in a light most favorable to the non-movant, in this instance, Black & Decker. *See Reeves*, 530 U.S. at 150-51; *Byrd v. Illinois Dep't of Pub. Health,* 423 F.3d 696, 712 (7th Cir. 2005). "[T]he question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 638 (7th Cir. 2003). "This is obviously a difficult standard to meet." *Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. 508,* 408 F.3d 339, 343 (7th Cir. 2005).

## II. Motion for a New Trial – Rule 59(a)

"Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law." *ABM Mktg., Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 543 (7th Cir. 2003) (citing Fed.R.Civ.P. 59(a)). The Seventh Circuit has clarified this standard explaining that a "motion for a new trial should succeed only if the verdict is against the manifest weight of the evidence." *Id.* at 545 (quotation and citation omitted). To satisfy this standard, Bosch must demonstrate that no rational jury could have rendered a verdict against it concerning the finding of willfulness. *See King v. Harrington,* 447 F.3d 531, 534 (7th Cir. 2006). When making this evaluation, the Court views the evidence in a light most favorable to Black &

Decker and cannot re-weigh the evidence or make credibility determinations. *Id.* The Court will sustain the verdict where a reasonable basis exists in the record to support the jury's finding. *Id.* "Because the trial judge is uniquely situated to rule on such a motion, the district court has great discretion in determining whether to grant a new trial." *Kempner Mobile Elec., Inc. v. Southwestern Bell Mobile Sys.,* 428 F.3d 706, 716 (7th Cir. 2005).

### III.    Motion to Alter or Amend the Judgment – Rule 59(e)

Rule 59(e) permits parties to file, within ten days of the entry of judgment, a motion to alter or amend the judgment. *See* Fed.R.Civ.P. 59(e). Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or consider newly discovered material evidence. *See County of McHenry v. Insurance Co. of the West,* 438 F.3d 813, 819 (7th Cir. 2006). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures" or "introduce new or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996); *see also Estremera v. United States,* 442 F.3d 580, 587 (7th Cir. 2006). Whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *Matter of Prince,* 85 F.3d 314, 324 (7th Cir. 1996); *see also Andrews v. E.I. Du Pont De Nemours & Co.,* 447 F.3d 510, 515 (7th Cir. 2006) (appellate court reviews denial of Rule 59(e) motion for abuse of discretion).

## ANALYSIS

In the present post-trial motion, Bosch argues that Black & Decker failed to present clear and convincing trial evidence of Bosch's willful infringement. When making willfulness findings, the jury must consider the totality of the circumstances in weighing and evaluating the

evidence. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1342-43 (Fed. Cir. 2004) (en banc )). "The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses." *Liquid Dynamics,* 449 F.3d at 1225 (citation omitted). The patentee bears the burden of persuasion and must prove willful infringement by clear and convincing evidence. *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1368 (Fed. Cir. 2006). Specifically, "the patentee must present threshold evidence of culpable behavior before the burden of production shifts to the accused to put on evidence that it acted with due care." *Id.* (citation and internal quotations omitted). After the *Knorr-Bremse* decision, this "threshold showing cannot be satisfied merely by proof that the accused is asserting the attorney-client privilege to withhold an opinion of counsel." *Golden Blount*, 438 F.3d at 1368. Instead, the "extent to which the infringer disregarded the property rights of the patentee, the deliberateness of the tortious acts, or other manifestations of unethical or injurious commercial conduct, may provide grounds for a finding of willful infringement." *Id.* at 1367-68 (citation omitted).

Thus, a "jury verdict of willfulness requires a finding by clear and convincing evidence in view of the totality of the circumstances that [the defendant] acted in disregard of the ... patent and lacked a reasonable basis for believing it had a right to do what it did." *nCube Corp. v. Seachange Int'l, Inc.,* 436 F.3d 1317, 1320 (Fed. Cir. 2006) (citation and internal quotations omitted). As such, in addressing Bosch's post-trial motion, the Court must determine whether – when viewed as a whole – there is substantial evidence upon which the jury could find willful

infringement by clear and convincing evidence.  *Id.*

I.     **Bosch's Knowledge of Black & Decker's Patent Rights**

First, Bosch contends that there is no evidence indicating that it willfully infringed the patents-in-suit after Black & Decker filed this lawsuit on December 8, 2004.  On the other hand, Black & Decker asserts that Bosch's division of its infringement into different time periods is artificial.  *See nCube Corp.,* 436 F.3d at 1324 ("Actual notice of another's patent rights triggers an affirmative duty of due care to avoid infringement.").  The Court agrees with Black & Decker because there is ample evidence that Bosch had notice of Black & Decker's patent rights before and after Black & Decker sent its notice letter and filed this lawsuit in November and December 2004, respectively.  *See id.* (willful infringement inquiry hinges on when defendants had actual knowledge of plaintiff's patent rights and defendants' actions thereafter).

A.     **Bosch's Knowledge Prior to Notice Letter & Lawsuit**

According to Bosch's internal documents, Bosch had specific knowledge of Black & Decker's patent rights prior to the November 1, 2004 notice letter and the filing of this lawsuit.  Specifically, Bosch created a document entitled Product Concept – Project Greenlight, RPU - Radio Power Unit – before it launched the Bosch Power Box project.  (*See generally* PTX # 34.)  In this document, Bosch admits that "Milwaukee did not want to infringe on the Dewalt radio charger patent, therefore they provide mounting screws for the charger on the back of the radio to accommodate the charger."  (*See* PTX #34 at B001439).  The document also identified that "Dewalt and Milwaukee are the only competitors within this $20 Mil. Product category."  (*Id.* at B001438.)  In fact, this Product Concept document discusses the DeWalt radio chargers in detail.  (*Id.* at B001438-B0011440.)  Furthermore, trial testimony reveals that Bosch's witness, Richard

Gray, heard about the DeWalt radio at a trade show before Bosch launched the Power Box. (Trial Tr. at 1155.) Gray subsequently talked to Bosch's engineers, Steven Cole and John DeCicco, about the DeWalt radio charger. (*Id.* at 1161-62.)

Nevertheless, Bosch argues that this evidence does not support the conclusion that it knew of the Domes patents prior to the notice letter because this evidence speaks to the DeWalt radio chargers, not specifically to the '059 and '925 patents. Bosch, however, fails to any cite authority – controlling or otherwise – in support of its argument that it must have knowledge of the actual patents. Indeed, the Federal Circuit instructs that it is the infringer's knowledge of **patent rights** that is relevant. *See nCube Corp.,* 436 F.3d at 1324; *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 13787 (Fed. Cir. 2005). Bosch's argument is without merit.

### B. Bosch's Knowledge Pursuant to the Notice Letter and Lawsuit

The notice letter addressed to Bosch's Chief Counsel, R. Warren Comstock, and dated November 1, 2004, explicitly states that the patents-in-suit are the '059 and '925 patents issued to Joseph Domes, the inventor. (PTX # 12 at BD015664-BD015667.) Further, Black & Decker's Complaint also explicitly identifies the patents-in-suit. (R. 1-1, Compl. ¶ 2.)

## II. Bosch's Willful Conduct & Copying

### A. Willful Conduct

Not only is there clear and convincing evidence upon which the jury could conclude that Bosch was aware of Black & Decker's patent rights before and after the notice letter, there is also clear and convincing trial evidence to support the jury's finding of Bosch's willfulness. More specifically, Black & Decker's witness, Christine Potter, testified as follows:

6

> Q. This is a letter to a Warren Comstock dated November 1, 2004, Chief Counsel, Intellectual Property, Robert Bosch Corporation. And it was sent by Charles Yocum, Senior Group Patent Counsel. And it indicates here that you got a copy. Do you recall receiving a copy of this letter?
>
> A. Yes, I do.
>
> ...
>
> Q. What was the purpose of this letter, as you understand it?
>
> A. As I understand it, it was to formally put Bosch on notice of infringement.
>
> ...
>
> Q. Now, did Bosch – as requested by Black & Decker on this November 1, 2004, letter – discontinue its sales?
>
> A. No, they did not.

(Trial Tr. at 243-45.)

Other trial evidence that supports the jury's willfulness finding is Cole's testimony that he was not aware of any steps Black & Decker took to avoid infringing the patents-in-suit:

> Q. So, after the meeting with Mr. Comstock in January or February of 2005, as you sit here today, you are not aware of any steps that Bosch Engineering took to avoid infringement or potential infringement of any of Black & Decker's patents that are being asserted against Bosch at that time?
>
> A. I am not aware of any steps that were taken after the January meeting.

(Trial Tr. at 864.) Cole further testified that he was not involved in any investigation of the possibility of infringement of the Domes patents:

> Q. I see. But you personally have not been involved in any of that type of project, is that right, with respect to the Power Box product?
>
> A. With respect to the Power Box, no.

(*Id.* at 865.)

Moreover, there is trial testimony that Bosch unsuccessfully sought a license from the inventor, Joseph Domes, after the notice letter, which supports an inference that Bosch was

7

explicitly aware of the possibility of infringement. *See Spindelfabrik Suessen v. Schubert & Salzer Maschinenfabrik*, 829 F.2d 1075, 1084 (Fed. Cir. 1987). Specifically, Domes testified to the following:

> Q. I want to take you back to a time when you received a call from an attorney for Bosch. Do you recall that?
>
> A. Yes.
>
> Q. When was it?
>
> A. It was November, '04.
>
> Q. And tell us what happened?
>
> A. I got a phone call from Bosch. I think it was a Mr. Greer.
>
> Q. Did he identify himself?
>
> A. Yes, as Mr. Greer.
>
> Q. What did he say?
>
> A. He said, "I would like to know if we can license your patent," and –
>
> Q. Did he identify who he was representing?
>
> A. He said he was representing Bosch.
>
> Q. What did you tell him?
>
> A. Well, I told him I couldn't at that time because I sold it to Black & Decker already.
>
> Q. Did he tell you where he was located?
>
> A. He said Chicago.
>
> Q. And tell us, as best you can recall, exactly what he said to you?
>
> A. Well, he said he had a new radio coming out for jobsites, that would be really nice for the job – you know, be a good jobsite radio.

8

> Q. And he asked for a license?
>
> A. Yes, he did.
>
> Q. And you said, what?
>
> A. I said I couldn't sell it to him at this time; I wish I could have, but I couldn't, because I already sold it to Black & Decker.
>
> Q. Did he tell you why they wanted a license?
>
> A. Well, he said they want it for their radio.
>
> Q. Did he identify the radio to you?
>
> A. He just said it was a new type of radio coming out, that was going to be very good for jobsites.

(Trial Tr. at 407-09.)

### B. Evidence of Copying

In addition, there is clear and convincing evidence in the trial record that Bosch copied key features of Black & Decker's radio charger based on trial testimony that in October 2002 Bosch sent the DeWalt radio charger to its supplier, Glory Horse, before designing the Power Box. *See Advanced Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1285 (Fed. Cir. 2000) (evidence of copying relevant to willfulness determination). Specifically, Bosch's lead engineer, Cole, and Glory Horse's principal, Thompson Cheung, testified that Glory Horse engineers studied the DeWalt radio charger, disassembled the it, and examined the internal circuitry. Cole testified as follows:

> Q. Now, Glory Horse studied the DeWalt unit, correct?
>
> A. That was one of the units they studied, yes.
>
> Q. Again, this was before they sent the prototype, correct?

A. Yes.

Q. They tested the unit?

A. They tested the audio of the unit, yes.

...

Q. They told you they took it apart?

A. Yes.

Q. And they looked at the internal components of the Black & Decker unit; isn't that correct?

A. Yes.

Q. Which would allow them access to the circuitry that's inside, correct?

A. Yes.

Q. And they told you that they did that, correct?

A. Yes.

(Trial Tr. at 905-06.)  At trial, Cheung testified:

Q. You did take this DeWalt unit apart, correct?

A. We first take the DeWalt – we first take the DeWalt – radio to compare for benchmark comparison for audio, for speaker sound.

Q. Okay. And in doing that –

A. And, obviously –

Q. I'm sorry.  Go ahead.

A. Sorry.  Obviously, I don't – I don't – think that I can stop my engineer in taking it apart.  There's no question about it.

Q. All right.  You didn't stop your engineers from taking it apart?

A. No, I can't.  I mean, the engineer do that.

10

> Q. Okay. How many engineers took it apart; do you know?
>
> A. Oh, I guess six – five, six – engineers that we have.

(*Id.* at 1327-28.)

Further, trial evidence supports the inference that Glory Horse and Bosch copied certain features of the DeWalt radio charger and incorporated those features into the Power Box radio. Specifically, Black & Decker points to Bosch's preliminary concept specification sent to Glory Horse, in which it wanted the following three features (1) the "capacity to be operated from a Bosch battery," (2) an "internal charger inside the radio housing," and (3) "ruggedness." (PTX #66 at B002254-B002256.) There is also trial testimony that Bosch and Glory Horse copied the "protective roll cage," the "speakers," the "antenna," the "cord wrap," the "handle," the "large knobs," "AM/FM tuner," ability to "be powered by an AC power outlet," ability to "be powered by power tool batteries," "integrated battery charger," the ability to "be played from batteries and charge multiple Bosch batteries," the "circuitry inside the radio," "trap door latches," "roll bars," "weather resistant material" and "rubber linkage to provide shock absorption." (Trial Tr. at 216-22, 225-27, 915-917, 1331-33.)

## III.    Good Faith Belief

Despite the clear and convincing evidence as discussed above, Bosch contends that it acted in good faith. "Good faith may normally be shown by obtaining the advice of legal counsel as to infringement or patent validity." *Liquid Dynamics Corp.,* 449 F.3d at 1225; *see also Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992) ("affirmative duty normally entails obtaining advice of legal counsel although the absence of such advice does not mandate a finding of willfulness"). Although Bosch contends that it sought advice from its litigation

counsel regarding invalidity and infringement, it does not set forth specific evidence concerning counsel's opinion. Instead, Bosch argues that it decided not to waive the attorney-client privilege for these opinions, and thus, under Federal Circuit law, it should not be penalized for its actions. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1351 (Fed. Cir. 2004) (en banc) ("the failure to obtain an exculpatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable"). Specifically, in *Knorr-Bremse*, "the affirmative duty of due care to avoid infringement was reiterated, but it was found no longer appropriate to draw an adverse inference with respect to willful infringement from failure to obtain legal advice." *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 1378 (Fed. Cir. 2005). As such, Bosch is allowed to invoke the attorney-client privilege without any adverse inference. *See id.* The *Knorr-Bremse* decision, however, does not hold that a positive inference of good faith can be made if a party does seek legal advice. *See Third Wave Tech. v. Stratagene Corp.,* 405 F.Supp. 2d 991, 1016-17 (W.D. Wis. 2005) (citing *Knorr-Bremse*, 383 F.3d at 1345).

Bosch argues that Black & Decker's closing remarks concerning Bosch's failure to set forth a legal opinion on infringement warrants a new trial. Black & Decker's closing remarks, however, do not pertain to the Court's analysis of whether the jury had substantial evidence upon which to find willful infringement by clear and convincing evidence. *See nCube Corp.,* 436 F.3d at 1320. Simply put, closing remarks are not evidence and the Court repeatedly instructed the jury as such. *See Denius v. Dunlap,* 330 F.3d 919, 928-29 (7th Cir. 2003) ("Statements made during closing argument are, of course, not evidence."). Further, the parties agreed to the jury instruction regarding willful infringement, which did not direct the jury to draw an inference

from the absence of counsel's opinion on infringement. *See United States v. White,* 443 F.3d 582, 588 (7th Cir. 2006) (jury is presumed to follow jury instructions). As such, Bosch's argument fails.[1]

Meanwhile, there is clear and convincing evidence in the trial record – not pertaining to Bosch's legal advice – that supports the jury's conclusion that Bosch did not have a good faith basis for its actions. For example, there is documentary evidence that Bosch specifically targeted the DeWalt radio charger and intended to get 24% of Black & Decker's market share. (PTX # 43 at B002258-B002259; PTX #146 at B023023). Furthermore, as cited above, Bosch's lead engineer, Cole, testified that he was not aware of anyone in engineering who took steps to avoid potential infringement of the patents-in-suit after Black & Decker sent Bosch the notice letter in November 2004 and initiated the lawsuit in December 2004. Cole also testified that he was not involved in any investigation into the possibility of infringement of the Domes patents.

Bosch nonetheless argues that it acted in good faith based on its legitimate defenses to Black & Decker's claims of infringement. Accepting Bosch's premise as true, Bosch's "defenses prepared for [ ] trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as 'due care' before undertaking any potentially infringing activity." *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001). Put differently, "good faith defenses are not dispositive." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 265 F.3d 1294, 1310 (Fed. Cir. 2001). In short, under the circumstances, Bosch's legitimate defense argument does not save the day.

---

[1] The Court addressed Black & Decker's conduct during closing arguments when denying Black & Decker's motion for attorney's fees pursuant to 35 U.S.C. § 285. (R. 569-1, November 20, 2006, Memorandum, Opinion, & Order at 8-9.)

Finally, Bosch's reliance on *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508 (Fed. Cir. 1990), for the proposition that it could continue to manufacture the Power Box radio after being put on notice is misplaced. The *Gustafson* court explained that "[e]xercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." *Id.* at 511. The *Gustafson* court, however, "did not hold, as a matter of law, that a party that continues its accused infringing activity after a patentee files suit cannot be guilty of willful infringement as long as that party presents a non-frivolous defense to infringement." *Crystal Semiconductor Corp.,* 246 F.3d at 1351-52. Indeed, the *Gustafson* court concluded that an alleged infringer's continued manufacturing of an accused product, alone, cannot be a basis for a finding of willful infringement. *Gustafson*, 897 F.2d at 511; *see also Advanced Cardiovascular Sys.*, 265 F.3d at 1310.

As discussed, there is substantial evidence beyond Bosch's continued manufacturing of the Power Box upon which the jury could conclude that Bosch did not exercise due care. There is also ample evidence in the trial record of Bosch's copying. *See Civix-DDI, LLC v. Cellco P'ship,* 387 F.Supp.2d 869, 903 n.39 (N.D. Ill. 2005) (citing *Crystal Semiconductor Corp.*, 246 F.3d at 1352). Furthermore, the facts in *Gustafson* are distinguishable because the Federal Circuit relied on the patentee's filing of a lawsuit immediately after the patent issued and consequently the manufacturer had no warning of its infringing conduct. *Id*. at 511. Here, the trial record evidences that Bosch had notice of Black & Decker's patent rights as early as 2002. Thus, Bosch's reliance on *Gustafson* fails.

**IV.     Conclusion**

Viewing the evidence and all reasonable inferences in a light most favorable to Black & Decker, there is clear and convincing evidence supporting the jury's conclusion that it was "highly probable" Bosch's infringing conduct was willful. *See Buildex Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988) ("Although not susceptible to precise definition, 'clear and convincing' evidence has been described as evidence which produces in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions are 'highly probable.") (citation omitted); *see also United States v. Boos,* 329 F.3d 907, 911 (7th Cir. 2003) ("highly probable" is Supreme Court's definition of clear and convincing standard of proof). In other words, there was a legally sufficient amount of evidence – under the clear and convincing standard – from which the jury could reasonably derive its willfulness finding. *See nCube Corp.,* 436 F.3d at 1320*; Zelinski*, 335 F.3d at 638. As the Federal Circuit instructs, "[t]he drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses." *Liquid Dynamics,* 449 F.3d at 1225. Here, Black & Decker presented clear and convincing evidence upon which the jury could draw reasonable inferences and ultimately conclude that Bosch's conduct was willful. Therefore, the Court denies Bosch's motion for judgment as a matter of law under Rule 50(b).

Moreover, Bosch has failed to demonstrate that no rational jury could have rendered a verdict against it on this issue, and thus the jury's willfulness finding was not against the manifest weight of the evidence. *See King,* 447 F.3d at 534. Put another way, there was a reasonable basis to support the jury's finding of willfulness. *See id*.; *nCube Corp.,* 436 F.3d at 1320. Thus, the Court, in its discretion, denies Bosch's motion for a new trial pursuant to Rule

15

59(a).

Finally, Bosch does not explain how the jury committed a "manifest error of law or fact" nor does Bosch point to newly discovered material evidence for the Court to consider. *See Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (manifest error is wholesale disregard, misapplication, or failure to recognize controlling precedent). Accordingly, the Court, in its discretion, also denies Bosch's Motion to Alter or Amend the Judgment pursuant to Rule 59(e).

## CONCLUSION

For these reasons, the Court denies Bosch's Motion for Judgment as a Matter of Law or to Alter the Judgment as to Willful Infringement and for a New Trial.

**Dated:** December 22, 2006

        **ENTERED**

        */s/ Amy J. St. Eve*
        **AMY J. ST. EVE**
        **United States District Court Judge**