IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLACK & DECKER INC. and | ) | |
| BLACK & DECKER (U.S.) INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04 C 7955 |
| v. | ) | |
| | ) | |
| ROBERT BOSCH TOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") brought this lawsuit against Defendant Robert Bosch Tool Corporation ("Bosch") alleging infringement of various claims of U.S. Patent Nos. 6,308,059 (the "'059 patent") and 6,788,925 (the "'925 patent"). Specifically, Black & Decker accused Bosch's Power Box radio chargers – Models PB-10 and PB-10-CD – of infringing each of the patents-in-suit that relate to rugged radios. On September 22, 2006, a jury returned a verdict finding that the Bosch Power Box infringed certain claims of both patents-in-suit. Before the Court is Bosch's Motion for Judgment as a Matter of Law or to Alter the Judgment and Motion for a New Trial pursuant to Federal Rules of Civil Procedure 50(b), 59(a), and 59(e). For the following reasons, the Court denies Bosch's motion.

## LEGAL STANDARDS

The law of the Seventh Circuit controls motions under Federal Rules of Civil Procedure 50 and 59 because they involve procedural issues not unique to patent law. *See Primos, Inc. v. Hunter's Specialties, Inc.,* 451 F.3d 841, 847 (Fed. Cir. 2006); *NTP, Inc. v. Research in Motion,*

*Ltd.,* 418 F.3d 1282, 1324 (Fed. Cir. 2005).

## I. Motion for Judgment as a Matter of Law – Rule 50(b)

When ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not re-weigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see* Fed.R.Civ.P. 50(b). Instead, the Court views the evidence and all reasonable inferences in a light most favorable of the prevailing party. *See Reeves*, 530 U.S. at 150-51; *Erickson v. Wisconsin Dep't Corrections,* 469 F.3d. 600, 601 (7th Cir. 2006). "[T]he question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 638 (7th Cir. 2003). In other words, the Court will overturn the jury's verdict only if no reasonable juror could have found in Black & Decker's favor. *See Erickson,* 469 F.3d at 601. "This is obviously a difficult standard to meet." *Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. 508,* 408 F.3d 339, 343 (7th Cir. 2005). Finally, a motion for judgment as a matter of law under Rule 50(a) must be made at the close of evidence before a party may renew the motion after a jury verdict pursuant to Rule 50(b). *See Zelinski,* 335 F.3d at 638.

## II. Motion for a New Trial – Rule 59(a)

"Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law." *ABM Mktg., Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 543 (7th Cir. 2003) (citing Fed.R.Civ.P. 59(a)). The Seventh Circuit has clarified this standard explaining that a "motion for a new trial should succeed only if the verdict is against the

manifest weight of the evidence." *Id.* at 545 (quotation and citation omitted); *see also Aero Products Int'l, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1016-17 (Fed. Cir. 2006) ("In the Seventh Circuit, a trial court may grant a new trial 'where the verdict is against the clear weight of the evidence,' while the court's ruling on a motion for a new trial is reversed only where there is a clear abuse of discretion.") (citation omitted). To satisfy this standard, Bosch must demonstrate that no rational jury could have rendered a verdict against it. *See King v. Harrington,* 447 F.3d 531, 534 (7th Cir. 2006). When making this evaluation, the Court views the evidence in a light most favorable to Black & Decker and cannot re-weigh the evidence or make credibility determinations. *Id.* The Court will sustain the verdict where a reasonable basis exists to support the jury's verdict. *Id.*

## III.     Motion to Alter or Amend the Judgment – Rule 59(e)

Rule 59(e) permits parties to file, within ten days of the entry of judgment, a motion to alter or amend the judgment. *See* Fed.R.Civ.P. 59(e). Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or consider newly discovered material evidence. *See County of McHenry v. Insurance Co. of the West,* 438 F.3d 813, 819 (7th Cir. 2006). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures" or "introduce new or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996); *see also Estremera v. United States,* 442 F.3d 580, 587 (7th Cir. 2006). Instead, Rule 59(e) "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995). Whether to grant a Rule 59(e)

motion "is entrusted to the sound judgment of the district court." *Matter of Prince,* 85 F.3d 314, 324 (7th Cir. 1996); *see also Andrews v. E.I. Du Pont De Nemours & Co.,* 447 F.3d 510, 515 (7th Cir. 2006) (appellate court reviews denial of Rule 59(e) motion for abuse of discretion).

## ANALYSIS

**I.      The '059 and '925 Patents**

In the present motion, Bosch challenges the jury's findings as to Claim 1 of the '059 patent, which recites:

> 1.  A combination battery charger and portable radio comprising;
>
> an enclosure;
>
> a radio disposed in said enclosure and including a radio receiver for receiving radio signals and generating audio output signals responsive thereto;
>
> an AC powered DC power supply disposed in said enclosure for powering said radio and generating a first DC output voltage having a magnitude sufficient to power said radio;
>
> a removable DC power supply disposed in said enclosure for powering said radio, said removable DC power supply being selected to generate a second DC output voltage having a magnitude in a range that includes voltages both lower and higher than the magnitude of said first DC output voltage from said AC powered DC power supply; and
>
> a power conversion circuit disposed between said AC powered DC power supply and said removable DC power supply, and between said radio and said removable DC power supply, to enable said removable DC power supply to power said radio and be charged by said AC powered DC power supply, regardless of the magnitude of the second DC output voltage from said removable DC power supply.

(PTX 1, U.S. Patent US 6,308,059 B1).

Bosch also argues that the jury committed a manifest error of fact in finding that the

Power Box radio satisfied the limitations of Claim 1 of the '925 patent, which recites:

1. a durable portable radio for tradesworkers comprising:

> an enclosure;
>
> a radio disposed in said enclosure and including a radio receiver for receiving radio signals and generating audio output signals responsive thereto;
>
> an AC powered DC charger for powering said radio and charging a removable DC voltage power source, said charger generating a first DC output voltage having a magnitude sufficient to power said radio;
>
> a removable DC power supply disposed in said enclosure for powering said radio and being charged by said charger, said DC power supply being selected to generate a second DC output voltage having a magnitude in a range that includes voltages both lower and higher than the magnitude of said first DC output voltage from said charger;
>
> a power conversion circuit disposed between said radio and said removable power supply, to enable said removable DC powered supply to power said radio regardless of the magnitude of the second DC output voltage from said removable power supply.

(PTX 2, U.S. Patent US 6,788,925 B2).

## II.     "Enabling Battery to be Charged" Limitation

Claim 1 of the '059 patent requires "a power conversion circuit ... to enable said removable DC power supply to power said radio and be charged by said AC powered DC power supply."  (*See* U.S. Patent US 6,308,059 B1).  Here, Bosch argues that Black & Decker presented no evidence that the Power Box radio charger met the "enabling battery charging" limitation.  In other words, Bosch contends that there was insufficient evidence to support the jury's finding that the Power Box had a power conversion circuit that enabled the AC powered DC power supply to charge the radio.

Contrary to Bosch's assertion, Black & Decker set forth trial testimony and documents that demonstrated the operation of the "power conversion circuit" in the Power Box radio, including how the IC4 (the voltage regulator) and JK1 (a relay) enabled battery charging. For instance, Black & Decker's technical expert witness, Dr. Andrew Neuhalfen, testified that the "IC4, along with JK1 perform the function of the power conversion circuit, as defined in this patent." (Ex. A, Tr. 648.) Dr. Neuhalfen further testified:

Q.   And in this configuration (indicating), the battery pack is disconnected from the radio; is that correct?

A.   Yes. And in that particular position, the switch is in a configuration that will disconnect the battery pack from powering the radio.

Q.   And the battery pack is connected to PB104 charger circuit board, correct?

A.   Yes, it is at that point.

(Trial Tr. at 609.) Black & Decker also set forth a Bosch RPU (radio power unit) Schematic, Plaintiff's Exhibit 88, which was the same concept as Bosch's Demonstrative Exhibit 750. (Trial Tr., T. Cheung, at 1312-13.) Based on this schematic, Dr. Neuhalfen testified:

Q.   And that if P is connected to 120 volts AC, the switch is open and the battery can get charged; is that correct?

A.   Correct.

Q.   An that if P is not plugged in, the switch closes and the battery cannot run the audio unit?

A.   No, it says "and the battery can run the audio unit."

Q.   Can run the audio unit?

A.   That's correct.

Q.   Is that – based on your understanding of how the radio charger operates, is that consistent with your understanding?

6

A.    Yes, it is.

(Trial Tr. at 564.)

The schematic contained handwritten notes which further supports the jury's finding. Specifically, it states "if P is connected to 120 volts AC, the switch is open and the battery can get charged."  (PTX 88, *see also* Trial Tr., S. Cole, at 932-34.)  In another trial exhibit, Plaintiff's Exhibit 112, an email between Bosch's lead engineer, Steve Cole, and other engineers supports the jury's finding that the power conversion circuit enabled battery charging.  The email included the following language:  "The cut-off function of the charger circuit will not work correctly if any circuit discharges the battery during charging.  (E.g., the customer uses the RPU and charges the battery at the same time)."  (PTX 112, *see also* Trial Tr. at 925-27.)  Indeed, the email states that "[w]hen the unit is plugged into the wall, a switch is opened and breaks the connection between the audio components and battery.  The battery is then free to charge." (PTX 112; *see also* Trial Tr. at 927.)

On the other hand, Bosch counters that its engineer, John DeCicco, flatly denied that the JK1 enabled battery charging and that its lead engineer, Steve Cole, testified that Plaintiff's Exhibit 88 was not the final Power Box schematic or the demonstrative schematic used at trial. (*See* Trial Tr. at 888, Trial Tr. at 944-45.)  When deciding post-trial motions for judgment as a matter of law, the Court must examine all of the evidence in the record, but cannot re-weigh the evidence or make credibility determinations.  *See Waite,* 408 F.3d at 343.  Thus, examining the trial record as a whole and deferring to the jury's credibility determinations, DeCicco's and Cole's testimony is not dispositive.

In fact, despite DeCicco's denial, his later testimony supports the jury's finding:

Q. So, the switch – JK1 (indicating) – disconnects the battery, correct?

A. Yes.

Q. It allows that battery to disconnect, correct?

A. Yes.

Q. And it allows the radio to be powered by AC power, right?

A. Yes.

Q. And when you plug in AC power, that switch goes to a different position, correct?

A. The switch can be in one of two positions.

(Trial Tr. at 889-90.) Further, Cole's testimony was refuted by Bosch's own witness, Thompson Cheung, who admitted that Plaintiff's Exhibit 88 was the "same concept" as Cheung's demonstrative schematic, DFX 750. (*Id.* at 1312-33.)

Viewing the evidence and all reasonable inferences in a light most favorable to Black & Decker, *see Reeves,* 530 U.S. at 150-51, Black & Decker has presented sufficient evidence from which the jury could reasonably derive its verdict. *See Zelinski,* 335 F.3d at 638. Put differently, Bosch has failed to show that no reasonable juror could have found in Black & Decker's favor concerning the enabling limitation. *See Erickson,* 469 F.3d at 601. As such, the Court will not overturn the jury's verdict as to this finding. *See Pierson v. Hartley,* 391 F.3d 898, 903 (7th Cir. 2004) ("law imposes a high standard for overturning a jury verdict"); *see also Filipovich v. K & R Express Sys., Inc.,* 391 F.3d 859, 863 (7th Cir. 2004) ("We will overturn a jury verdict only if, after reviewing th[e] evidence, it is clear that the plaintiff failed to present enough evidence to support her claim.").

Furthermore, Bosch has failed to establish that a new trial is warranted pursuant to Rule

59(a). More specifically, there was a reasonable evidentiary basis supporting the jury's finding, and thus the verdict is not against the manifest weight of the evidence. *See King,* 447 F.3d at 534. Finally, because Bosch has not established that the jury committed any manifest errors of fact, the Court, in its discretion, denies Bosch's Rule 59(e) motion. *See Andrews,* 447 F.3d at 515; *County of McHenry,* 438 F.3d at 819.

## III. Other Limitations of the '059 Patent

Because Bosch did not move for judgment as a matter of law under Rule 50(a) in relation to the following arguments, Bosch is precluded from bringing a motion for judgment as a matter of law following the jury's verdict on these issues under Rule 50(b). *See Zelinski,* 335 F.3d at 638; *see also Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (courts may not grant judgment as matter of law on issues not raised in pre-verdict motion). Thus, the Court need only determine whether the following arguments support the standards for a new trial under Rule 59(a) or to alter or amend the judgment under Rule 59(e).

### A. AC Powered DC Power Supply

Element 3 of Claim 1 of the '059 patent requires "an AC powered DC power supply disposed in said enclosure for powering said radio and generating a first DC output voltage having a magnitude sufficient to power said radio." (*See* U.S. Patent US 6,308,059 B1.) The Court construed this element as "a direct current power supply in the enclosure powered by alternating current that generates a direct current output voltage sufficient to power the radio." *Black & Decker v. Bosch*, 389 F.Supp.2d 1010, 1021-22 (N.D. Ill. 2005) (*Markman* order).

In the present motion, Bosch contends that there is no evidence showing an "AC powered DC power supply" in the Power Box radio. To the contrary, Black & Decker's technical expert

Dr. Neuhalfen testified that the Power Box radio charger included an AC powered DC power supply:

> Q.    Let's back up to the, "AC powered DC power supply." Do you see that?
>
> A.    Yes.
>
> Q.    And, in your opinion, does the Bosch radio charger have an AC powered DC power supply disposed in said enclosure for powering said radio and generating a first DC output voltage having a magnitude sufficient to power the radio?
>
> A.    Yes, it does.
>
> Q.    And can you show us where – on your demonstrative PDX-110 where – that's located?
>
> A.    On the demonstrative display board, the AC powered DC power supply is contained in the outlined area in yellow (indicating). It includes transformers T1 and T2, and the upper printed circuit board, as well as the lower printed circuit board.

(Trial Tr. at 603-04, PDX 110.) In fact, Dr. Neuhalfen repeatedly explained to the jury that the Power Box had a AC powered DC power supply:

> Q.    Can you show us specifically in this demonstrative where the AC powered DC charger is located?
>
> A.    The AC powered DC charger is within the yellow box. It includes two transformers that you see here (indicating) – T1 and T2 – and two circuit boards. That circuitry is the AC powered DC charger that's capable of powering the radio and charging the battery pack.
>
> Q.    Is that one circuit?
>
> A.    Yes, it is.
>
> Q.    Why is that?
>
> A.    Because it creates the function of charging the battery pack and powering the radio.

10

Q.      Is there a document that supports your conclusion?

A.      Yes, there is.

Q.      And what is that?

A.      That would be the electrical schematic of the power supply and charger circuitry.

(*Id.* at 531-32; PTX 93; *see also* PTX 90.)

Because Dr. Neuhalfen's testimony and the Power Box schematic provide a reasonable basis to support the jury's verdict concerning an "AC Powered DC power supply," the Court denies Bosch's motion for a new trial on this limitation. *See King,* 447 F.3d at 534. Further, because Bosch has not established that the jury committed a manifest error of fact, the Court, in its discretion, denies Bosch's motion to alter or amend under Rule 59(e). *See Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000)

## B.      The "Between" Limitation

Claim 1 of the '059 patent requires "a power conversion circuit disposed ***between*** said AC powered DC power supply and said removable DC power supply, and ***between*** said radio and said removable DC power supply...." (*See* U.S. Patent US 6,308,059 B1.) (emphasis added). Here, Bosch argues that IC4 is part of the claimed "radio," and thus cannot be between the radio and the battery. To recap, in the *Markman* order, the Court defined "radio" in claim 1 of the '059 patent and claims 1 and 2 of the '925 patent as a "radio receiver and an audio output component." *See Black & Decker,* 389 F.Supp.2d at 1019.

Despite Bosch's argument, Black & Decker presented sufficient evidence that IC4 was a voltage regulator and was not part of the radio receiver or other audio output components, including Dr. Neuhalfen's testimony and the testimony of John DeCicco, a Bosch engineer.

(Trial Tr. at 525-31, Trial Tr. at 870-71; *see also* PTX 90.)  Meanwhile, Black & Decker also set

forth trial evidence that the "power conversion circuit" was "between" the "radio" and the

battery, and "between" the AC powered DC power supply and the battery, including Dr.

Neuhalfen's testimony:

> Q.     And can you identify on the board where JK1 and IC4 are located?
>
> A.     JK1, the switch, is positioned here (indicating).  It's in the black box.  That's the electromagnetic switch that changes its position, depending on whether or not it's plugged into an AC power supply.
>
>        And IC4, which is here (indicating), they are connected together.  And that is a voltage regulator that performs the function of stepping down the voltage from either the AC power supply, from the power cord or battery pack and stepping that voltage down to a 6-volt output in order to power the radio.
>
> Q.     And if you look up on the screen, that's a portion of the schematic that we referred to yesterday, and that's PTX-90?
>
> A.     Yes, it is.
>
> Q.     And does that depict the power conversion circuit that you just described?
>
> A.     Yes, it does.
>
> Q.     That includes JK1 and IC4; is that correct?
>
> A.     That's correct.
>
> Q.     Now, where is the power conversion circuit located in PDX-110?
>
> A.     The power conversion circuit is located between the radio and the removable battery supply; and, also, between the AC powered DC power supply and the battery – DC –  removable DC –  power supply.

(Trial Tr. at 607-08; PDX 110, *see also* PTX 90.)

Moreover, additional trial evidence supports the jury's finding that the Power Box radio

charger had a power conversion circuit between the radio and the AC powered DC power supply

and between the radio and the battery.  For example, Bosch's witness Mr. Cheung testified to the

following:

> Q.     So, this switch disconnects the battery when you are charging, right?
>
> A.     Yes.
>
> Q.     And the switch that's shown, JK1 – and what you described as the Bosch unit – also disables the battery when the AC plug is in, right?
>
> A.     Yes.
>
> Q.     There is a good reason for that, isn't there?
>
> A.     Because to disconnect it because when there's AC, we always like to have the AC power supply that power [sic] the radio.
>
> Q.     So, this preliminary concept was adopted ultimately in the design that you came up with, right?
>
> A.     Not this – well, as I said, this was the first concept and we improved this into this concept.
>
>         The reason is very simple.  That in this concept, that you have a AC receiver, AC radio.  All right?  And we have [an] identical charger which charge[s] the battery.  All we did it, is when there's no power, the switch connects the power of the radio to the battery.
>
>                                         ....
>
> Q.     Now together, this switch JK1 and this voltage regulator IC4 do the things we talked about.  They together allow this switching that we talked about, correct?
>
> A.     (shaking head).
>
> Q.     It allows – the switch allows – you to configure the circuits in the way we just described?
>
> A.     Yes.
>
> Q.     And IC4 allows you to change the energy state of the voltages so you can operate the radio, correct?
>
> A.     Yes.

13

(Trial Tr. at 1310-14.)

Viewing this trial evidence and all reasonable inferences in Black & Decker's favor, the jury's finding that the Power Box had a power conversion circuit between the radio and the AC powered DC power supply and between the radio and the battery is not against the manifest weight of the evidence. *See King,* 447 F.3d at 534. Instead, there was a reasonable evidentiary basis supporting the jury's verdict. *See id.* Moreover, Bosch fails to fulfill the standard under Rule 59(e) and merely rehashes the same arguments it made in its unsuccessful pre-trial motions and at trial. Thus, the Court, in its discretion, denies Bosch's Rule 59(e) motion. *See Oto,* 224 F.3d at 606.

## C.    The "Regardless" Limitation

Bosch also argues that Black & Decker did not present any evidence at trial showing that the "regardless" limitation is included in the Power Box. Specifically, the limitation states: "a power conversion circuit enabling said removable power supply to power said radio and be charged by said charger, regardless of the magnitude of the second DC output voltage from said removable power supply." (*See* U.S. Patent US 6,308,059 B1). The parties did not ask the Court to construe the term "regardless" during the claim construction process. Further, the Court instructed the jury to give claim terms their plain and ordinary meaning.

At trial, both Bosch's technical expert and Black & Decker's technical expert testified that the Power Box radio operates regardless of whether 12V or 24V batteries were used. Dr. Horowitz stated the following:

Q.    If the radio's designed to operate between 12 volts and 24 volts, then it will operate in that range regardless of which of the batteries you put in, right; "Yes" or "No"?

14

A.     The way you phrased it, the answer is "Yes."

(Trial Tr. at 1672, *see also* Trial Tr., A. Neuhalfen, at 515-16.)  Dr. Neuhalfen's testimony

concerning the instructions on the actual Power Box unit that stated "Charge only Bosch 12 to 24

volt batteries BAT 025 through BAT045" also supports the jury's finding.  (*Id*. at 537.)

Moreover, Mr. Cheung testified that if more than 24V were used, the Power Box radio would

"blow up."  (Trial Tr. at 1296-97.)  Last, Bosch's lead engineer, Steve Cole, testified that the

Power Box radio operates regardless of whether 12V or 24V batteries are used.  (Trial Tr. at

919-20, 1067-68.)

Again, viewing the trial evidence in a light most favorable to Black & Decker, the jury's

finding that the Power Box radio operates regardless of whether 12V or 24V batteries are used is

reasonably supported by the record.  *See King,* 447 F.3d at 534.  Bosch has failed to establish

that no rational jury could have rendered the verdict against it.  *See id.*  Because the jury did not

commit any manifest errors of fact, Bosch's motion under Rule 59(e) also fails.  *See County of*

*McHenry,* 438 F.3d at 819.

**IV.     Claim 1 of the '925 Patent**[1]

In addition to the claim terms discussed above under the '059 patent, Claim 1 of the '925

patent requires "an AC powered DC charger for powering said radio and charging a removable

DC voltage power source."  (*See* U.S. Patent US 6,788,925 B2.)  Bosch contends that Black &

Decker did not present evidence that the Power Box included this limitation.  Because Bosch did

not make this argument in its pre-verdict motion for judgment as a matter of law, Bosch is

---

[1] Because the Court rejected Bosch's arguments concerning the "between," "regardless,"
and "enabling" limitations under the '059 patent, the Court need not discuss these arguments
regarding the same limitations in the '925 patent.

precluded from bringing a motion for judgment as a matter of law following the jury's verdict under Rule 50(b). Accordingly, the Court examines whether a new trial is warranted concerning this limitation or if the Court should alter or amend the judgment under Rule 59(e).

First, the Court notes that Bosch's cursory argument relies on the Court's claim construction pertaining to Claim 9 of the '925 patent and not Claim 1 of the '925 patent. *See Black & Decker,* 389 F.Supp.2d at 1033 (*Markman* order). In fact, the Court did not construe the claim term "charger" in Claims 1 and 2 of the '925 patent in the *Markman* order. Instead, the Court read the following ***agreed upon*** instruction to the jury:

> The term "an AC powered DC charger for powering said radio and charging a removable DC voltage power source" in claims 1 and 2 of the '925 patent means "a direct current charger powered by alternating current that is capable of powering the radio and is capable of charging the removable direct current voltage power source."

(Trial Tr. at 1826-27.)

Meanwhile, at trial, Black & Decker presented sufficient evidence upon which the jury could make the finding that the Power Box included an AC powered DC charger for powering the radio and charging the removable battery. Dr. Neuhalfen for example testified that the Power Box had the capability of operating off of battery packs and that the radio could run off of AC power. (Trial Tr. at 514-15.) He further testified that the Power Box had a removable DC battery pack and "[i]n order to charge the Bosch battery pack in the unit, you need to have it plugged into an AC power source." (*Id.* at 515.) In addition, Dr. Neuhalfen testified:

> Q. When the power cord is plugged in, can you demonstrate what happens at JK1? And this is on AC power.
>
> A. On AC power, what happens at JK1, it receives the signal – electrical signal – from the power cord to cause it to go into a position that connects the AC powered DC charger to operate the radio.

Q.     Okay.  And, now, when you unplug it, is the unit operating on battery?

A.     The unit is capable of operating off the battery power when the unit is unplugged.

(*Id.* at 523.)

In addition, Bosch's witness, John DeCicco, testified to the following:

Q.     When the cord is plugged into the wall socket, so you have 120-volt AC, there are two separate bridge rectifiers working so that one is to charge the removable battery pack and the other one is to power the radio inside the product; is that right?

A.     That's my understanding.

(*Id.* at 878.)  Mr. DeCicco further testified:

Q.     Those two bridge rectifiers enable that condition to happen:  The AC cord plugged in, you can play the radio, you can charge the battery?

A.     Yes.

(*Id.* at 853.)

Construing this evidence and all reasonable inferences in favor of Black & Decker,

Bosch has failed to demonstrate that no rational jury could have rendered a verdict against it.

*See King,* 447 F.3d at 534.  Simply put, this straight-forward testimony supports the jury's

finding that the Power Box contained "an AC powered DC charger for powering said radio and

charging a removable DC voltage power source."  Bosch has failed to "clearly establish" that the

jury committed a manifest error of fact, and thus the Court denies its Rule 59(e) motion, as well.

*See Harrington v. City of Chicago,* 433 F.3d 542, 546 (7th Cir. 2006) (Rule 59(e) requires that

the movant clearly establish grounds for relief.)

V.     **Inconsistent Verdict**

Finally, Bosch argues that the "Court should enter judgment that Claim 1 of the '925

patent is invalid or grant a new trial" because the verdict is inconsistent. More specifically,

Bosch argues:

> Claims 1 and 2 of the '925 patent are almost identical. *See* '925 Patent (PTX 2). Yet the jury found claim 1 to be valid and claim 2 to be invalid under 35 U.S.C. §§ 102 and 103. *See* Verdict Form at 3-4 (Ex. 4). After considering the only possible explanation to reconcile these seemingly inconsistent verdicts, it is clear that the jury committed [a] manifest error of fact by finding claim 1 valid. As such, Bosch requests that this Court alter this judgment pursuant to Fed. R. Civ. P. 59(e) and find that claim 1 is invalid. Alternatively, the jury's judgment that claim 1 is valid goes against the weight of the evidence and a new trial should be granted under Fed. R. Civ. P. 59(a).

(R. 516-1, Mem. in Support of Mot. J. Matter of Law, at 13.)

Bosch did not contemporaneously object to the alleged inconsistent verdict at the time

the jury rendered it, which, in most federal circuits, amounts to waiver of the argument. *See*

*Pearson v. Welborn,* ___ F.3d ___, Nos. 05-1068, 05-1241, 2006 WL 3530568, at *6 (7th Cir.

Dec. 8, 2006) (citing *Kosmynka v. Polaris Indus., Inc.,* 462 F.3d 74, 83 (2d Cir. 2006) ("It is well

established that a party waives its objection to any inconsistency in a jury verdict if it fails to

object to the verdict prior to the excusing of the jury."). The Seventh Circuit, however, has yet

to decide whether failure to contemporaneously object under these circumstances constitutes

waiver. *See Pearson,* 2006 WL 3530568, at *6 (citing *Carter v. Chicago Police Officers,* 165

F.3d 1071, 1079-80 (7th Cir. 1998) ("acknowledging rule but declining to decide whether failure

to contemporaneously object "constitutes a definitive waiver")).

Nevertheless, "[a] party claiming that inconsistent verdicts have been returned is not

entitled to a new trial 'unless no rational jury could have brought back' the verdicts that were

returned." *Delougherty v. City of Chicago,* 422 F.3d 611, 617 (7th Cir. 2005) (citation omitted);

*see also Slane v. Mariah Boats, Inc.,* 164 F.3d 1065, 1067 (7th Cir. 1999) ("court may award a

new trial if the verdict is not rationally connected to the evidence"). When possible, however,

courts must reconcile inconsistent verdicts. *Deloughery,* 422 F.3d at 617; *see also Freeman v. Chicago Park Dist.,* 189 F.3d 613, 615 (7th Cir. 1999) ("jury verdicts must be interpreted so as to avoid inconsistency whenever possible").

In order to rule in Bosch's favor, Bosch asks the Court to accept the following premise: "After considering ***the only possible explanation*** to reconcile these seemingly inconsistent verdicts, it is clear that the jury committed [a] manifest error of fact by finding claim 1 valid." (Mem. in Support of Mot. J. Matter of Law, at 13) (emphasis added). Bosch's premise is faulty because there is more than one "possible explanation" for the jury's findings. For instance, although Claims 1 and 2 of the '925 patent are nearly identical, Bosch admits that Claim 1 requires that the power conversion circuit be disposed between the radio and the battery, whereas Claim 2 requires the power conversion circuit to enable the battery. (*See id*. at 13.) Because Claim 2 does not have any limitation as to the location of the power conversion circuit, the jury could have found the lack of location of the power conversion circuit enough to render the claim invalid. Accordingly, based on the evidence present at trial, the jury could have found these two claims distinguishable, and thus they are not inconsistent. *See, e.g., L & W, Inc. v. Shetech, Inc*., ___ F.3d ___, Nos. 06-1065, 06-1097, 81 U.S.P.Q.2d 1198 (Fed. Cir. Dec. 14, 2006).

As with any motion for a new trial, the Court must view the evidence and all reasonable inferences in a light most favorable to the prevailing party, namely, Black & Decker, and cannot re-weigh the evidence or make credibility determinations. *See King,* 447 F.3d at 534. Bosch ignores this standard and makes arguments concerning the "assumptions" that the jury made in relation to the Manpack Article and other evidence presented at trial. *See Research Sys. Corp. v. IPSOS Publicite,* 276 F.3d 914, 921 (7th Cir. 2002). As such, Bosch's arguments cannot and do

not support the standard for a new trial under Rule 59(a). *See id.* Moreover, Bosch's argument that Dr. Horowitz's testimony establishes that the jury committed a manifest error of fact does not save the day because the jury, as the trier of fact, weighs the evidence and makes credibility determinations. *See Ovadal v. City of Madison, Wis.,* 469 F.3d 625, 630 (7th Cir. 2006) ("In weighing direct and circumstantial evidence, the trier of fact plays a particularly significant role as the arbiter of credibility") (citation omitted). Accordingly, the jury is not required to rely upon Dr. Horowitz's testimony as credible.

Finally, Bosch's arguments in support of its motion for a new trial based on inconsistent verdicts that it made for the first time in its reply brief are waived. *See Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005) (arguments made for the first time in reply brief are waived leaving the non-movant no opportunity to respond); *see also United States v. Ford Motor Co.*, 463 F.3d 1267, 1276-77 (Fed. Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before th[e] court.").

Because Bosch has failed to establish that "no rational jury" could have returned the present verdict, *see Deloughery,* 422 F.3d at 617, its motion for a new trial based on an inconsistent verdict fails. Further, because the proper remedy for an inconsistent verdict is a new trial under Rule 59(a), *see Deloughery,* 422 F.3d at 617, Bosch's request that the Court alter the judgment and rule that Claim 1 of the '925 patent is invalid under Rule 59(e) is misplaced. Even if the Court were to examine Bosch's argument under Rule 59(e), Bosch has failed to establish that the jury committed a manifest error of fact. *See Oto*, 224 F.3d at 606. Therefore, the Court, in its discretion, denies Bosch's request to alter the judgment under Rule 59(e). *See Andrews,* 447 F.3d at 515.

## CONCLUSION

For these reasons, the Court denies Bosch's Motion for Judgment as a Matter of Law or to Alter the Judgment, and Motion for a New Trial pursuant to Federal Rules of Civil Procedure 50(b), 59(a), and 59(e).

**Dated:** January 12, 2007

ENTERED

**AMY J. ST. EVE**
**United States District Court Judge**