IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BLACK & DECKER INC. and )
BLACK & DECKER (U.S.) INC., )
 )
   Plaintiffs, )
 ) No. 04 C 7955
  v. )
 )
ROBERT BOSCH TOOL CORPORATION, )
 )
   Defendant. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

  Plaintiffs Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "Black & Decker") accused Defendant Robert Bosch Tool Corporation's ("Bosch") Power Box radio chargers of infringing various claims of U.S. Patent Nos. 6,308,059 (the "'059 patent") and 6,788,925 (the "'925 patent") that relate to rugged jobsite radios. On September 22, 2006, a jury returned a verdict finding that the Bosch Power Box radio chargers infringed certain claims of both patents-in-suit. The jury also found that claims 2 and 10 of the '925 patent were invalid as anticipated and obvious under 35 U.S.C. §§ 102(b), 103(a). Before the Court is Black & Decker's Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) concerning Bosch's invalidity defenses. For the following reasons, the Court grants Black & Decker's motion.[1]

---

[1] The Court's decision in the present Memorandum, Opinion, and Order does not affect the outcome of the Court's other post-trial decisions in this matter. (*See* R. 567-1, 569-1, 570-1, 575-1, 578-1, 590-1, 603-1, 612-1, 614-1, and 616-1.)

## Claims 2 and 10 of the '925 Patent

Claim 2 of the '925 patent recites:

2. A durable portable radio for tradesworkers comprising:

>   an enclosure;
>
>   a radio disposed in said enclosure and including a radio receiver for receiving radio signals and generating audio output signals responsive thereto;
>
>   an AC powered DC charger for powering said radio and charging a removable DC voltage power source, said charger generating a first DC output voltage having a magnitude sufficient to power said radio;
>
>   a removable DC power supply disposed in said enclosure for powering said radio and being charged by said charger, said DC power supply being selected to generate a second DC output voltage having a magnitude in a range that includes voltages both lower and higher than the magnitude of said first DC output voltage from said charger;
>
>   a power conversion circuit enabling said removable power supply to power said radio and be charged by said charger, regardless of the magnitude of the second DC output voltage from said removable power supply.

(PTX 2, U.S. Patent US 6,788,925 B2.)

Claim 10 of the '925 Patent recites:

10. A durable portable radio for tradesworkers comprising:

>   a weather and impact resistant enclosure having an exterior surface and an interior space;
>
>   radio receiver means for receiving radio signals and generating electronic audio output signals responsive thereto;
>
>   said exterior surface having a plurality of surfaces,
>
>   an antenna extending from one surface of said plurality of surfaces,

> a handle[,]
>
> a ventilation opening extending from said interior space of said radio,
>
> a first power source including an electrical cord engageable with an electrical outlet,
>
> an adapter engageable with a removable secondary rechargeable direct current power source, said removable secondary rechargeable direct current power source engagable [sic] with a remote direct current powered hand tool,
>
> a charger to charge said secondary rechargeable direct current power source from said first power source, and wherein said second power source includes a battery pack having a voltage of between about 9.6 to about 18 volts.

(PTX 2, U.S. Patent US 6,788,925 B2.)

## **LEGAL STANDARD**

The law of the Seventh Circuit controls the standard for motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 because they involve procedural issues not unique to patent law. *See NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1324 (Fed. Cir. 2005). When ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not re-weigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see* Fed.R.Civ.P. 50(b). Instead, the Court views the evidence and all reasonable inferences in a light most favorable to the non-movant, in this instance, Bosch. *See Reeves*, 530 U.S. at 150-51; *Erickson v. Wisconsin Dep't Corr.,* 469 F.3d. 600, 601 (7th Cir. 2006). "[T]he question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict."

3

*Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 638 (7th Cir. 2003). In other words, the Court will overturn the jury's verdict only if no reasonable juror could have found in Bosch's favor. *See Erickson,* 469 F.3d at 601. "This is obviously a difficult standard to meet." *Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. 508,* 408 F.3d 339, 343 (7th Cir. 2005).

## ANALYSIS

I. **Anticipation – 35 U.S.C. § 102(b)**

   A. **Legal Standard**

Black & Decker argues that there was insufficient trial evidence upon which the jury could find that claims 2 and 10 of the '925 patent were invalid as anticipated. Under Section 102(b), a patent is anticipated if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." A "patent claim is invalid as anticipated if every limitation in a claim is found in a single prior art reference, either explicitly or inherently." *Impax Labs., Inc. v. Aventis Pharm. Inc.,* 468 F.3d 1366, 1381 (Fed. Cir. 2006). In addition, for "prior art to anticipate a claim 'it must be sufficient to enable one with ordinary skill in the art to practice the invention.'" *SmithKline Beecham Corp. v. Apotex Corp.,* 403 F.3d 1331, 1342 (Fed. Cir. 2005) (quotation omitted). "Anticipation is a factual determination that is reviewed for substantial evidence when decided by a jury." *Koito Mfg. v. Turn-Key-Tech LLC,* 381 F.3d 1142, 1149 (Fed. Cir. 2004). "In other words, we ask whether the record taken as a whole would support the verdict in the mind of a reasonable person." *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1218 (Fed. Cir. 2006). Under this standard, the Court must determine whether the jury had substantial evidence upon which to conclude that Bosch met its

4

burden of establishing anticipation by clear and convincing evidence. *See Koito Mfg.*, 381 F.3d at 1151-52 (alleged infringer shoulders "especially heavy burden" when challenging the validity of a patent).

In *Koito*, the Federal Circuit reiterated what is necessary to establish anticipation by a given reference:

> Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.

*Id.* at 1152 (quoting *Schumer v. Laboratory Computer Sys., Inc.,* 308 F.3d 1304, 1315-16 (Fed. Cir. 2002)). Accordingly, under this standard, entering prior art references into evidence without a sufficient explanation of the claim elements will not suffice. *See id.* Furthermore, because Bosch is required to establish that a single prior art reference met all of the limitations of the claims at issue, *see Impax Labs.,* 468 F.3d at 1381, Bosch cannot prove anticipation by combining references. *See Studiengesellschaft Kohle, m.b.H.v. Dart Indus., Inc.,* 726 F.2d 724, 726-27 (Fed. Cir. 1984) ("It is hornbook law that anticipation must be found in a single reference, device, or process").

**B.     Prior Art References**

At trial, Bosch argued that certain claims of the '059 and '925 patents were invalid pursuant to 35 U.S.C. §102(b) based on the printed publication, "Manpack: A New Solution to an Old Problem," ("Manpack Article") by A. H. Bellman, Jr. and R. A. Caton that was published in Signal Magazine in 1977.[2] Bosch introduced evidence of anticipation via its technical expert,

---

[2] Although Bosch asserts that the Grundig Manual and Grundig Article also anticipated claim 2 of the '925 patent, Bosch contends that for the sake of brevity, it would only focus on the

Dr. Paul Horowitz. At trial, Dr. Horowitz testified that the Manpack Article did not contain every element of the Domes patents, which are the patents-in-suit. Specifically, Dr. Horowitz testified as follows:

> Q. Am I correct that the Manpack article – what you allege is prior art – in fact, doesn't disclose all of the elements of the claims of the Domes patents?
>
> A. Well, it doesn't have a ventilation opening. So, obviously, not all of the claim elements. I believe I said in my report quite clearly that with the possible exception of an enclosed charger battery pack, it met all the claim limitations of a particular claim.
>
> ....
>
> Q. So, the short answer to my question is: It did not disclose all of the elements of each of the claims of the Domes patents, correct?
>
> A. ***The article I read did not permit me to include, with certainty, that there was a charger battery pack that was enclosed.***

(R. 561-1, Bosch Mem. Opp. JMOL, Ex. 2, Trial Tr., Horowitz, at 1686-87.) (emphasis added).

Bosch nevertheless asserts that the testimony of Robert Caton, the co-author of the Manpack Article, along with Mr. Caton's photographs of his engineering model of the Manpack Radio, establish that the Manpack Article met the enclosed battery charger limitation. The Manpack Radio photographs were published to the jury in connection with Mr. Caton's videotape deposition played at trial. (*Id.* at 1479-81.) Mr. Caton testified as follows:

> Q. Mr. Caton, I'm handing you a clear sleeve marked as exhibit two containing a photograph. Do you recognize this photograph, Mr. Caton?
>
> A. I do.

---

Manpack prior art references in its legal memorandum. As such, Bosch has waived this argument. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.") (citations omitted); *see also Smithkline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("passing reference to an issue ... will not suffice to bring that issue before this court.") (citation omitted).

> Q. What is it?
>
> A. Specifically it's my engineering model of the 8640 receiver and it also has, I believe the designation is UNH16 on top which is an 8-millimeter tape recorder that operated from the voice output of the receiver. On the left hand side is the speaker with the cord, the attachment cord rolled up. That's to be plugged into the front panel connector for the purpose of amplifying the sound. You could either use a head set or you could use the speaker.
>
> Q. Is this a photograph of the model WJ8640 radio?
>
> A. It is.
>
> Q. Is exhibit one a true and – is exhibit two a true and accurate representation of the model WJ8640 radio?
>
> A. It is.

(Trial Tr. at 1481; Ex. 3, Caton Dep at 8-9.) Mr. Caton further testified:

> Q. What is exhibit five?[3]
>
> A. The unit on the bottom is the WJ8640 with the battery pack snapped back so you can see the rear of the actual receiver assembly and the speaker container is on top whereas the battery pack is hinged away so that you can see the actual D cell batteries.
>
> Q. Is exhibit five a true and accurate representation of the model WJ8640 radio described in your article exhibit one?
>
> A. It is.
>
> Q. Is the photograph in exhibit five a photograph of the same radio that was shown in the photograph in exhibit two?
>
> A. It is.

(*Id.*; Caton Dep. at 12-13.) Mr. Caton, however, did not identify the claim limitations of the

---

[3] Some of Mr. Caton's Manpack Radio photographs were not published in the Manpack Article, including exhibit 5 used at his deposition. (*See* DFX 423.)

7

patents-in-suit to which he was referring.

Under Federal Circuit law, Mr. Caton's explanation of the Manpack Radio – along with the photographs of his engineering model – cannot fill the gap of the missing claim limitation that was not referenced in the Manpack Article. *See Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002). As the *Teleflex* court explained: "Although we have permitted the use of additional references to confirm the contents of the allegedly anticipating reference, we have made clear that anticipation does not permit an additional reference to supply a missing claim limitation." *Id.* (internal citation omitted). More specifically,

> It is sometimes appropriate to consider extrinsic evidence to explain the disclosure of a reference. Such factual elaboration is necessarily of limited scope and probative value, for a finding of anticipation requires that all aspects of the claimed invention were already described in a single reference: a finding that is not supportable if it is necessary to prove facts beyond those disclosed in the reference in order to meet the claim limitations. The role of extrinsic evidence is to educate the decision-maker to what the reference meant to persons of ordinary skill in the field of the invention, not to fill gaps in the reference.

*Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576-77 (Fed. Cir. 1991). Accordingly, Bosch cannot piece together Dr. Horowitz's testimony, Mr. Caton's deposition testimony, the Manpack Article, and photographs of Mr. Caton's engineering model of the Manpack Radio to establish that the Manpack Article disclosed all of the claim elements.

Bosch, however, also argues that it may combine these particular references to establish that the Manpack Radio was in public use under Section 102(b). For prior art to anticipate because it has been in public use, the use must be accessible to the public. *Minnesota Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1301 (Fed. Cir. 2002). Public use includes any use of the claimed invention by a person – other than the inventor – who is under no limitation, restriction, or obligation of secrecy to the inventor. *Netscape Commc'n Corp. v. Konrad,* 295

8

F.3d 1315, 1321 (Fed. Cir. 2002).

Although Bosch may combine prior art references to establish public use, *see, e.g.*, *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1352 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006), Bosch did not present clear and convincing evidence that the Manpack Radio was publically used. The Manpack Radio, for instance, was not admitted into evidence and Dr. Horowitz testified that he had never seen or examined the Manpack Radio. (Trial Tr. at 1685.) In addition, under the International Traffic Arms Regulations, 22 C.F.R. §§120-130, sales of the Manpack Radio are restricted to the United States government. (R. 157-6, T. Wilson Decl. ¶ 3.) As such, the Manpack Radio is not publicly available. *See Carboline Co. v. Mobil Oil Corp.*, 301 F.Supp. 141, 148 (N.D. Ill. 1969) ("Work done under the government security classification 'Restricted' is not publically available and is not prior art within the meaning of 35 U.S.C. § 102."). Moreover, Bosch does not point to specific evidence in the record that the Manpack Radio was in public use, but instead argues that nothing in the record suggests that the military's use of the Manpack radio was not a public use. In short, Bosch's argument concerning what was not in the trial record does not establish public use by clear and convincing evidence.

Finally, as required under Federal Circuit case law, Dr. Horowitz did not identify each element of claims 2 and 10 of the '925 patent and explain how the Manpack Article or the Manpack Radio disclosed each claim element. *See Koito Mfg.,* 381 F.3d at 1152 (witness skilled in art must explain in detail how each claim element is disclosed in prior art reference). In fact, Dr. Horowitz admitted that his anticipation analysis only concerned the Manpack Article, and not any other prior art references, such as the Manpack Radio. (Trial Tr. at 1685, 1694.) In sum,

9

Dr. Horowitz's testimony about the Manpack Article was merely conclusory. *See id.* ("general and conclusory evidence ... does not suffice as substantial evidence of invalidity.")

Thus, viewing the evidence and all reasonable inferences in favor of Bosch, the jury was not presented with legally sufficient evidence from which it could reasonably derive its anticipation finding because no single prior art reference included all of the elements of claim 2 of the '925 Patent and Bosch did not present any evidence that the Manpack Radio was accessible to the public. *See Zelinski,* 335 F.3d at 638. Moreover, Dr. Horowitz did not speak to the elements of claim 10 of the '925 Patent. *See Koito Mfg.,* 381 F.3d at 1152. In fact, in its Memorandum in Opposition to Black & Decker's Rule 50(b) motion, Bosch does not argue that the Manpack Article – or any other prior art reference – anticipated all of the limitations of claim 10. Viewing the evidence and all reasonable inferences in a light most favorable to Bosch, no reasonable juror could have found in Bosch's favor because there was no evidence, let alone clear and convincing evidence, supporting the jury's anticipation finding as to claim 10 of the '925 patent. *See Erickson,* 469 F.3d at 601. Accordingly, the Court grants Black & Decker's motion for judgment as a matter of law with respect to the jury's anticipation findings.

## II.     Obviousness – 35 U.S.C. § 103(a)

### A.     Legal Standard

Next, Black & Decker argues that there was insufficient trial evidence upon which the jury could find that claims 2 and 10 of the '925 patent were invalid based on obviousness. "As for obviousness, a claimed invention is unpatentable if the differences between it and the prior art are 'such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Alza Corp. v. Mylan Labs., Inc.,* 464

F.3d 1286, 1289 (Fed. Cir. 2006) (citations omitted). Whether an invention would have been obvious under Section 103(a) is a legal conclusion based on factual findings concerning: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; and (3) the differences between the claimed invention and the prior art. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). "In review of a jury verdict on the ground of obviousness, the underlying findings of fact, whether explicit or presumed as necessary to support the verdict, are reviewed for substantial evidentiary support; and the ultimate question of obviousness is reviewed for correctness in law, based on the factual premises." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1375-76 (Fed. Cir. 2004) ("These standards are applied by the district court upon motion for judgment as a matter of law, and again by the appellate court upon grant or denial of that motion.").

Unlike anticipation based on the printed publication provision of Section 102(b), Bosch may combine prior art references to establish obviousness. *See In re Kahn,* 441 F.3d 977, 988 (Fed. Cir. 2006). When relying on a combination of prior art references to establish obviousness, the fact finder must determine "whether a person of ordinary skill in the art, possessed with the understandings and knowledge reflected in the prior art, and motivated by the general problem facing the inventor, would have been led to make the combination recited in the claims." *Id.* Obviousness, however, cannot be based on conclusory statements, "instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Id.*

    **B.**    **Additional Prior Art References**

1. **Textbook – Art of Electronics**

At trial, Bosch argued that certain claims of the patents-in-suit were invalid pursuant to 35 U.S.C. §103(a), based on the textbook entitled "The Art of Electronics," by Dr. Paul Horowitz and W. Hill that was published in 1989. (R. 511-1, B&D Mem. Supp. JMOL, Ex. B, DFX 419.) Dr. Horowitz testified about his textbook as follows:

> I guess I would say that the parts that are particularly relevant are the section in which power converters are discussed. This is in the power chapter – regulator chapter. Both kinds of linear regulators, like IC4, and the kind of DC-to-DC converters, step-up and step-down converters, of the sort that are illustrated in Figure 7 of the patent, as we saw yesterday.

(Trial Tr. at 1579-80). Dr. Horowitz further testified:

> Q. And would you identify for us, for the benefit of this jury, where in this book, with all its teachings and everything that it discloses to the world, where the circuit diagrams are that are identical to what's in the patent?
>
> A. I'm not going to play this game with you. If you'd like – the point that I put this in the report was to exhibit some of the knowledge of practicing engineers at the time of the Domes filing.
>
> This (indicating) represents the knowledge of practicing engineers. This does not represent the Domes patent.
>
> Q. *Would you agree with me that there's no description of the Domes invention, there's no disclosure of the Domes invention, there's no sketch of the Domes invention, there's nothing in your book that describes to one of ordinary skill in the art the Domes invention*.
>
> A. *Of course, I would agree with that.*
>
> Q. The book shows the pieces, right?
>
> A. Yes, in various places, as one of skill in the art at the time would know if they were trying to design such a device.

(Trial Tr. at 1681-82.) (emphasis added).

2. **The Grundig Radio**

Other alleged prior art references Bosch relied upon include an operating manual entitled, "Grundig Satellit 700 World Receiver," with an unknown publication date, and an article entitled "The Great Grundig Satellit 700" by T. Baler that was published in 2002. First, because the Grundig Article was published approximately six years after the Domes patents' critical date of December 12, 1996 – one year prior to the application date – it cannot be prior art. *See* 35 U.S.C. § 102(b); *see also In re Klopfenstein*, 380 F.3d 1345, 1349 (Fed. Cir. 2004) ("statutory phrase 'printed publication' has been interpreted to mean that before the critical date the reference must have been sufficiently accessible to the public interested in the art"). Second, because the Grundig Owner's Manual was not dated and Bosch did not provide evidence of its date, the manual is not prior art under the "printed publication" provision of Section 102(b). *See In re Epstein,* 32 F.3d 1559, 1564-65 (Fed. Cir. 1994). In fact, Dr. Horowitz testified that the Grundig Article was not prior art based on the date of its publication and that he could not prove that the Grundig Manual was published before the critical date of the Domes patents. (*Id.* at 1687-90.)

Bosch nevertheless contends that the Grundig Article and Grundig Manual establish that the Grundig Satellit 700 World Receiver Radio was in public use or on sale in the United States prior to the critical date. *See, e.g., TypeRight Keyboard Corp. v. Microsoft Corp.,* 374 F.3d 1151, 1155 (Fed. Cir. 2004); *see also In re Epstein*, 32 F.3d at 1566-67. Indeed, Dr. Horowitz testified that the Grundig Article stated that the Grundig Radio was available for purchase in the United States in 1992. Bosch contends that this constitutes sufficient evidence for a reasonable jury to find that the Grundig Radio was on sale before the Domes patents' critical date.

Black & Decker, on the other hand, argues that Dr. Horowitz's testimony is not only

hearsay, but is not clear and convincing evidence of the alleged date of sale. Black & Decker, however, did not object to Dr. Horowitz's trial testimony concerning the sale date. Further, at this procedural posture, the Court is required to construe the evidence and all reasonable inferences in favor of Bosch, and thus Dr. Horowitz's testimony is sufficient evidence for the jury to rely upon. *See Reeves*, 530 U.S. at 150-51; *Erickson,* 469 F.3d at 601. In the end, however, whether the Grundig Radio was on sale in the United States prior to December 12, 1996, is not dispositive because Bosch failed to present sufficient evidence at trial establishing a motivation to combine references, as discussed in further detail below. *See In re Kahn,* 441 F.3d at 986.

### C. Motivation to Combine References

Black & Decker asserts that Bosch did not identify or explain the basis for combining the prior art references, and thus the jury's finding of obviousness was in error. As the Federal Circuit recently reiterated "a party alleging invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *Abbott Labs. v. Andrx Pharm., Inc.,* 452 F.3d 1331, 1336 (Fed. Cir. 2006) (citing *In re Kahn,* 441 F.3d at 986). The *Kahn* court articulated:

> Most inventions arise from a combination of old elements and each element may often be found in the prior art. However, mere identification in the prior art of each element is insufficient to defeat the patentability of the combined subject matter as a whole. Rather, to establish a prima facie case of obviousness based on a combination of elements disclosed in the prior art, the Board must articulate the basis on which it concludes that it would have been obvious to make the claimed invention. In practice, this requires that the Board "explain the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." This entails consideration of both the "scope and content of the prior art" and "level of

14

ordinary skill in the pertinent art" aspects of the *Graham* test.

*Id.* at 986 (citing *In re Rouffet*, 149 F.3d 1350, 1355-59 (Fed. Cir. 1998)) (internal citations omitted). The motivation to combine need not be found in the prior art references, however, but may be found in the knowledge generally available to one of ordinary skill in the art, the prior art as a whole, or the nature of the problem itself. *See id.* at 988; *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.,* 464 F.3d 1356, 1361 (Fed. Cir. 2006).

To recap, evidence at trial revealed that the Manpack Article did not disclose all of the elements of claims 2 and 10 of the '925 patent. Also, Dr. Horowitz testified that his own textbook, "The Art of Electronics," did not show all of the components of the Domes invention. Further, there is evidence that the Grundig Radio was sold in the United States prior to the Domes patents' critical date and Dr. Horowitz talked about the Grundig Radio at trial based on the Grundig Manual and Grundig Article.[4] (Trial Tr. at 1596-1605.)

Dr. Horowitz, however, did not explain what the cited references taught, namely, the scope and content of the prior art. *See In re Kahn,* 441 F.3d at 986*; see also Medichem,* 437 F.3d at 1164 (citing *Graham,* 383 U.S. at 17). Simply put, there was no testimony explaining the reasons *why* "one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *See Abbott Labs.,* 452 F.3d at 1336. Instead, Dr. Horowitz offered conclusory and somewhat confusing testimony concerning

---

[4] Although Bosch submitted several additional items of alleged prior art to the jury, the parties only discuss the Manpack Article, the Manpack Radio, the Grundig Article, the Grundig Manual, the Grundig Radio, and the Art of Electronics in their legal memoranda. Also, because Bosch cannot meet its burden of providing clear and convincing evidence by merely entering the alleged prior art references into evidence, the Court need not address any references to which there was no explanatory testimony. *See Koito Mfg. v. Turn-Key-Tech LLC,* 381 F.3d 1142, 1152 (Fed. Cir. 2004).

Bosch's obviousness defense. *See Schumer,* 308 F.3d at 1316 ("to accept confusing or generalized testimony as evidence of invalidity is improper. The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony.")

Accordingly, reviewing the evidence and all reasonable inferences in a light most favorable to Bosch, Bosch did not present clear and convincing evidence upon which the jury could base its obviousness findings because there was no trial evidence concerning the motivation to combine the prior art references. *See Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1578-79 (Fed. Cir. 1997) ("[T]he record must provide a teaching, suggestion, or reason to substitute.... The absence of such a suggestion to combine is dispositive in an obviousness determination."). As such, the Court grants Black & Decker's motion for judgment as a matter of law with respect to the jury's obviousness findings.

**CONCLUSION**

For these reasons, the Court grants Black & Decker's Motion for Judgment as a Matter of Law Regarding Bosch's Invalidity Defenses.

**Dated:** February 20, 2007

                                        **ENTERED**

                                  _____
                                  **AMY J. ST. EVE**
                                  **United States District Court Judge**